BISHOP et al., Appellants,

v.

MUNSON TRANSPORTATION, INC. et al., Appellees.

[Cite as *Bishop v. Munson Transp., Inc.* (1996), 109 Ohio App.3d 573.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 94–B–7.

Decided Feb. 29, 1996.

574

*Louis H. Khourey,* for appellant Ronald L. Bishop.

*Gerald P. Duff,* for appellant Health Plan of Upper Ohio Valley, Inc.

*James J. Turek* and *Jack J. Kigerl,* for appellees.

---

GENE DONOFRIO, Judge.

Plaintiff-appellant, Ronald L. Bishop, and intervenor-appellant, the Health Plan of Upper Ohio Valley, Inc., appeal from an order of the Belmont County Common Pleas Court directing a verdict for defendants-appellees, Munson Transportation, Inc. and Glen E. Stewart.

This case arose out of a motor vehicle accident that occurred on July 7, 1989, in the westbound lanes of Interstate 70 in Belmont County, Ohio. Appellant Bishop was rendered incompetent as a result of the accident, and his mother, Mary A. Bishop, was appointed as his guardian. Mary A. Bishop filed a complaint on behalf of her son on October 19, 1990, against appellees, Munson Transportation, Inc. ("Munson"), and the driver of Munson's tractor-trailer, Glen Stewart, alleging negligence in the truck driver's operation and negligent supervision and negligent entrustment on behalf of Munson. Subsequent to the filing of the complaint, intervenor-appellant, the Health Plan of Upper Ohio Valley, Inc., a provider of health insurance for Bishop, was permitted to intervene to seek recovery of hospital and medical expenses. Appellees denied any negligence on their behalf, and contended affirmatively that it was Bishop's own conduct that proximately caused his injuries.

The trial commenced on February 15, 1994. After both sides had presented their cases, the court granted appellees' motion for a directed verdict, finding that appellees were not negligent as a matter of law, and that the proximate cause of Bishop's injuries was his impaired driving while under the influence of alcohol. This appeal follows.

Health Plan of the Upper Ohio Valley joined in Bishop's brief in the presentation of this appeal. In the first assignment of error, appellants state:

"The trial court erred in granting a directed verdict in favor of the defendants."

The trial court's standard for granting a directed verdict is set forth in Civ.R. 50(A)(4), which provides:

"When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

■ A motion for a directed verdict tests the legal sufficiency of the evidence and therefore presents a question of law, even though in deciding the motion it is necessary to review and consider the evidence. *Grau v. Kleinschmidt* (1987), 31 Ohio St.3d 84, 90, 31 OBR 250, 255, 509 N.E.2d 399, 404; *Eldridge v. Firestone Tire & Rubber Co.* (1985), 24 Ohio App.3d 94, 96, 24 OBR 164, 165–66, 493 N.E.2d 293, 295. When reviewing a directed verdict, the court of appeals applies the same standard as that employed by the trial court. *Donaldson v. N. Trading Co.* (1992), 82 Ohio App.3d 476, 480, 612 N.E.2d 754, 756–57.

■ In applying this standard to the facts of this case, we find substantial competent evidence upon which reasonable minds could differ as to whether appellees were negligent and as to whether that negligence was the proximate cause of Bishop's injuries.

■ When confronted with an appeal on the issue of a directed verdict, the court of appeals must construe the evidence most strongly in favor of the party against whom the motion is directed. Therefore, we have thoroughly reviewed the evidence presented at trial and have reviewed it in a light most favorable to the nonmovants, the appellants.

The evidence presented at trial, if viewed in a light most favorable to appellants, shows that on the morning of July 7, 1989, the day of the accident, Bishop, along with four other men, consumed twenty-four cans of beer between approximately 7:30 a.m. and 11:30 a.m. The five men, former co-workers, had met in the parking lot of a Giant Eagle supermarket following the completion of the midnight shifts at their places of employment. After leaving the parking lot, three of the men stopped at a local bar for approximately an hour and a half, during which time Bishop was said to have consumed about two more beers. It is unknown exactly how much beer Bishop consumed that morning. An eyewitness testified, however, that Bishop did not appear to be intoxicated at the time

he left the bar. Very little is known about what happened between the time Bishop left the bar and the time of the accident, which occurred at approximately 2:00 p.m.

The accident occurred in the westbound lanes of Interstate 70 in Belmont County, Ohio. On that day, the weather was sunny and the roads were dry. Munson's tractor-trailer unit, driven by Stewart, was proceeding west on Interstate 70 in the right lane, while Bishop approached in the passing lane. When the back of Bishop's car was even with the back of the tractor-trailer, the driver of the tractor-trailer, Stewart, put on his left turn signal and began encroaching into the left lane. The tractor trailer had moved anywhere from around one-quarter to one-half of the way into the left lane, coming within inches of Bishop's vehicle, when Bishop swerved left. At this point, the left wheels of Bishop's vehicle were in the center grass, and the two right wheels were on the gravel shoulder. Bishop then attempted to come back onto the road; however, the tractor-trailer was still partially in the left-hand lane. Bishop then swerved left again to avoid hitting the truck, this time losing control of his vehicle and rolling into the grass in the center of the median. Eyewitness testimony indicated that Bishop's driving seemed normal and unimpaired prior to the accident.

Approximately one hour after the accident, a blood serum alcohol test was administered on Bishop at the Ohio Valley Medical Center, which revealed a serum alcohol level of .244 percent (this level translates to a blood alcohol level of approximately .19 percent). From the serum alcohol level indicated in the test result, the Ohio Valley Medical Center's admitting diagnosis included acute alcohol intoxication.

Based on the evidence, the trial judge concluded that Stewart was not negligent in the operation of the tractor-trailer. The trial judge also found that the sole proximate cause of Bishop's injuries was his impaired driving while under the influence of alcohol.

Considering the evidence most strongly in favor of the parties against whom the directed verdict was entered, this court must reverse the trial court's decision. Reasonable minds could conclude that Stewart's attempt to change lanes while another vehicle was traveling beside his vehicle constitutes negligence. Reasonable minds could also conclude that Stewart's act of attempting to change lanes was the proximate cause of Bishop's injuries. While traveling in an automobile at speeds that freeway driving demands, an individual who is unexpectedly confronted by a tractor-trailer attempting to merge into his or her lane of travel could reasonably be expected to quickly swerve to avoid contact. Reasonable minds could also conclude that an unexpected swerve at such a high speed would cause even a sober driver to lose control of his or her vehicle. Although appellant Bishop was initially able to maneuver his vehicle back onto the highway, the record does not reveal that he ever regained control of his

vehicle after Stewart's lane change. Consequently, reasonable minds could conclude that Stewart's attempted lane change, not Bishop's intoxication, was the proximate cause of appellant Bishop's injuries.

Appellants' first assignment of error has merit.

Appellants' second assignment of error states:

"The trial court erred in admitting evidence of a blood serum alcohol test."

Appellants, in their second assignment of error, allege two separate reasons why the trial court erred in admitting evidence of a blood serum alcohol test. First, appellants argue that absent evidence that Bishop's alleged intoxication caused his injuries, any evidence of intoxication is irrelevant and inadmissible. Second, appellants aver that there was not an adequate foundation for the admission of the serum alcohol test result. We will address each of appellants' contentions separately.

Ohio Evid.R. 401 defines "relevant evidence" as follows:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

■ Evidence concerning Bishop's alcohol consumption on the morning of the accident and the blood-alcohol test results are relevant to the issue of his comparative negligence and are admissible. The evidence has a tendency to raise the probability that Bishop's own actions were the proximate cause of his injuries. Bishop's contention that the alleged intoxication must be shown to be the proximate cause of his injuries before evidence of intoxication would be admissible places the cart before the horse.

Appellants further allege that appellees did not establish an adequate foundation for the admission of the blood serum alcohol test results. Upon review of the record, the trial court's admission of the blood serum alcohol test was correct.

■ As stated in *Wells v. Miami Valley Hosp.* (1993), 90 Ohio App.3d 840, 858, 631 N.E.2d 642, 653:

"[F]acts from medical records are presumed to be accurate and true. Expert opinion testimony based on data in medical records, as opposed to recorded physician opinions in medical records, is valid. Evid.R. 703. Where medical records are not admitted into evidence by an agreement of the parties, the business record exception to the hearsay rule would allow such records in. Evid.R. 803(6)."

Evid.R. 803(6) provides that the following is not excluded by the hearsay rule:

"A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted

business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness \* \* \*."

█ Under the business records exception to the hearsay rule, " '[t]he witness providing the foundation need not have firsthand knowledge of the transaction. Rather, it must be demonstrated that the witness is sufficiently familiar with the operation of the business and with the circumstances of the record's preparation, maintenance and retrieval, that he can reasonably testify on the basis of this knowledge that the record is what it purports to be, and that it was made in the ordinary course of business consistent with the elements of Evid.R. 803(6).' " *State v. Vrona* (1988), 47 Ohio App.3d 145, 148, 547 N.E.2d 1189, 1194 quoting 1 Weissenberger's Ohio Evidence (1985) 75–76, Section 803.79.

Robert Reed III, M.D., Bishop's attending physician in the emergency room at the Ohio Valley Medical Center ("OVMC") testified at trial. Dr. Reed stated that he has had extensive experience working with the OVMC. Reed displayed personal knowledge of the procedures the OVMC staff employs when a patient is brought into the emergency room. Reed explained that the blood serum alcohol test was standard practice at the OVMC, that the test was necessary to properly treat Bishop, that he was familiar with the system used to obtain blood samples at the OVMC and that in his opinion, the result of the blood serum alcohol test was accurate. Furthermore, Reed identified the chart presented at trial, which contained the result of the blood serum alcohol test, as authentic.

█ The decision to admit a business record into evidence pursuant to Evid.R. 803(6) rests within the sound discretion of the trial court and will not be disturbed on appeal absent a clear showing of an abuse of discretion. See *Cleveland v. Huff* (1984), 14 Ohio App.3d 207, 212, 14 OBR 235, 239–40, 470 N.E.2d 934, 940. Based on the testimony of Dr. Reed, the trial court cannot be said to have abused its discretion in allowing the results of the blood serum alcohol test into evidence. The justification for this application of the business records exception lies in the substantial guarantee of trustworthiness that attends the inherent need for accuracy in the preparation and use of medical records.

Appellants' second assignment of error is without merit.

The judgment of the trial court in granting a directed verdict is hereby reversed, and this case is remanded for a new trial in accordance with law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

O'Neill, P.J., and Cox, J., concur.