This is an appeal from a judgment of the Court of Common Pleas of Butler County, Juvenile Division, in which the trial court adjudicated the following with respect to the Spencer children: Erika (DOB 7/10/92), an abused and dependant child; Matthew (DOB 7/12/89), a dependant child; and Jeffery (DOB 12/19/86), a dependant child. The trial court also ordered that the children remain in the legal custody of their biological father, Mark Spender, while visitation with their biological mother, appellant, Gina Spender, be supervised. We affirm the trial court's judgment.
The following facts are pertinent to this appeal. Appellant and Mark Spender were divorced in 1995. As a result of appellant's bouts with mental illness, Mark was ultimately awarded custody of the children while appellant was granted visitation. Following a weekend visit with appellant, Erika was bathing at her father's with her stepsister, Jessie. Jessie reported that Erika attempted to insert the legs of a Barbie doll into her vagina. When questioned, Erika stated that Rick King ("King"), appellant's paramour, had put his claws in her pee-pee. Erika also related that King had put his pee-pee in her mouth and made her swallow something and it was nasty.
On March 4, 1997, Erika's stepmother had her examined by Dr. Jarrett who discovered lacerations in Erika's vagina. Suspicious, Dr. Jarrett reported his findings to the Butler County Children's Services Board ("BCCSB"). On March 14, 1997, BCCSB filed a complaint with the court alleging that Erika was an abused and dependant child and that her siblings, Matthew and Jeffery, were dependant children.
The adjudicatory hearing was held on February 4, 1998. Prior to this date, on October 22, 1997, the state had presented testimony from Dr. Jarrett regarding his medical examination of Erika. Dr. Jarrett testified about the nature of Erika's injuries and stated that based upon the shape and location of the lacerations, they were "most likely * * * from some type of possible fingernail occurrence." On cross examination, appellant's counsel attempted to question Dr. Jarrett about whether Erika's injuries may have been caused by the legs of the Barbie doll. When the state objected to the question on the basis of form, the court ordered appellant to rephrase. Eventually, the following colloquy transpired:
 Q. You didn't determine if it was some other some other type of instrument or something that could cause the same type of mark as a fingernail?
A. That's. . .
Q. Is a fingernail just a guess? Is that . . .
MS. LAMPE: Objection.
BY THE COURT: I think that's a proper question.
MS. LAMPE: He already answered it.
BY THE COURT: I'll allow it. Overruled.
 A. I felt that was the most likely, but of course there's other possibilities.
 MS. LAMPE: And again I'll object and move to strike that.
 BY THE COURT: I think there's a . . . it's a good answer. Overruled.
The only other evidence presented by the state was from Dr. Sherry Baker, a psychologist at the Children's Diagnostic Center who specializes in child sexual abuse cases. Dr. Baker interviewed Erika on March 10, 1997 regarding the allegations of sexual abuse, and prepared a written report which was admitted into evidence. At the hearing, Dr. Baker testified that Erika had exhibited a number of behavioral symptoms indicative of sexual abuse. Further, during cross examination Dr. Baker testified that Erika "demonstrated explicit knowledge of sexual acts that she would not be expected to know at her age." Based upon her interview with Erika, Dr. Baker diagnosed Erika as a sexual abuse victim. On re-direct, Dr. Baker was asked the following question, without objection from appellant's counsel:
 Q. Okay. And do you have an opinion as to who the perpetrator of abuse is?
A. Yes.
 Q. And is that again based upon the factors that I just gave you to a reasonable degree of psychological certainty?
A. Yes.
Q. Who is that perpetrator in your opinion?
A. Rick King.
Q. Thank you. That's all I have.
No testimony was presented from Erika as the court determined in an in camera hearing that she was incompetent to testify.
Appellant presented the testimony of Erika's grandmother and Erika's uncle, both of whom testified that Erika was complaining of pain to her pee-pee during her visit with appellant, and suggested that the abuse occurred prior to Erika's visit with appellant. King then testified that he had never been alone with Erika. Finally, appellant testified that King was never alone with Erika and that she did not believe King had sexually abused Erika. On cross examination, appellant gave testimony regarding her mental illnesses and their accompanying medical treatments.
In a judgment entry filed February 17, 1998, a magistrate entered findings that Erika was sexually abused. The magistrate found that Erika had described for Dr. Baker the biological functions of "arousal, erection, and ejaculation with extreme accuracy in credible childlike terms" and was therefore very compelling and credible. The magistrate also found that the evidence pointed to King as the perpetrator of the abuse, and that the "[m]other presented no credible evidence" to the contrary. The magistrate then found the following by clear and convincing evidence:
 that Erika Spender is a sexually abuse (sic) child, having been sexually abused by Rick King while in the custody of her mother Gina Spender. This court finds, further, that mother's inability or unwillingness to believe that such abuse could have taken place, coupled with mother's medical condition, renders mother incapable of protecting Erika, Matthew, or Jeffery from the danger of being similarly abused or mistreated. Further, this court finds that all of these children are dependant children for the foregoing reasons * * *.
The court then ordered that the children remain in the legal custody of Mark Spencer and that appellant's visitation be supervised.
On March 27, 1998, the court held its dispositional hearing and ordered appellant to participate in a non-offending parent support group and that her visitation with the children remain supervised. On April 9, 1998, appellant filed objections to the magistrate's decision. On April 21, 1998, the trial court overruled appellant's objection, without hearing. On May 12, 1998, appellant filed a notice of appeal alleging three assignments of error.
In her first assignment of error, appellant contends:
 THE COURT ERRED TO THE PREJUDICE OF GINA SPENCER, WHEN IT FAILED TO ALLOW AN EXPERT WITNESS TO RESPOND TO A QUESTION CONCERNING AN ALTERNATIVE THEORY AS TO THE INJURY SUSTAINED BY HER DAUGHTER.
Under this assignment of error, appellant contends that when appellant attempted to inquire of Dr. Jarrett "whether the injury could have possible been caused by the Barbie doll itself," the court erred to the prejudice of appellant by sustaining the objection. However, upon review of the record, we find that appellant has mischaracterized the events at the hearing, and we overrule this assignment of error.
It is generally accepted that:
 Rulings concerning the admissibility of expert testimony are within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of abuse of discretion.
State v. Savchuk (Sept. 15, 1995), Lake App. No. 93-L-187, unreported at 19, quoting Frank v. Vulcan Materials (1988),55 Ohio App.3d 153, paragraph two of the syllabus. "It is well-established in the law of this state that the trial court must have made a decision implying an attitude that is unreasonable, arbitrary, or unconscionable to constitute an abuse of discretion." Columbus v. Taylor (1988), 39 Ohio St.3d 162,165.
Upon review, we cannot find that the trial court abused its discretion in this matter because in fact, appellant eventually rephrased the question so that she was able to elicit from Dr. Jarrett whether he had determined if some other type of instrument could have caused Erika's injuries. In fact, on cross examination, Dr. Jarrett admitted that there were indeed other possibilities for Erika's injury. Thus, the record reveals that appellant was able to present substantially the same testimony that she would have been able to present had the trial court not ordered her to rephrase the question (i.e., that there existed other possibilities for Erika's injuries). Furthermore, upon review of the record before us, we cannot say that the trial court abused its discretion when it directed appellant's counsel to rephrase the question. Accordingly, we conclude that the trial court did not err with respect to this line of questioning, appellant did not suffer any prejudice and her first assignment of error is overruled.
In her second assignment of error, appellant contends:
 THE COURT ERRED TO THE PREJUDICE OF GINA SPENCER IN FINDING RICK KING TO BE THE PERPETRATOR OF ABUSE WHEN NO LEGALLY ADMISSIBLE TESTIMONY ON THIS ISSUE WAS PRESENTED.
Under this assignment of error, appellant challenges the trial court's findings. Specifically, appellant alleges that the trial court findings were based on "the hearsay statements of Erika as related to Dr. Baker." Appellant also argues that the trial court erred in allowing Dr. Baker to offer an opinion as to the identity of the perpetrator of abuse.
We begin with the admissibility of the hearsay statements of Erika as related to Dr. Baker. The area of expert testimony in child abuse cases requires courts to engage in a delicate balancing act. Specifically, the Ohio Supreme Court has stated that to make "a hard and fast rule" that child abuse victims' out-of-court statements to experts "are per se inadmissible would be tantamount to preventing prosecution." State v. Boston
(1989), 46 Ohio St.3d 108, 125. Accordingly in Boston, the Supreme held:
 that an out-of court statement of an allegedly abused child of tender years, including identification of a perpetrator, made to a qualified expert in child abuse, is admissible if the expert has independent evidence of the physical or emotional abuse of the child, the child has no apparent motive for fabricating the statement and the child has been found unavailable * * *.
Id. at 127.
Given the foregoing case law and the record before us, we find that the hearsay statements of Erika as related to Dr. Baker were properly admitted.[1] The parties do not dispute that Dr. Baker was a qualified expert in child abuse, or that Erika was found incompetent to testify. Further, this court's review of Dr. Baker's admitted report reveals that she relied upon Dr. Jarrett's physical examination of Erika as independent corroborating evidence of the sexual abuse, and that such reliance was certainly proper. See Bishop v. Munson Transp.,Inc. (1996), 109 Ohio App.3d 573. Accordingly, we find appellant's contention that trial court erred to her prejudice when it admitted the hearsay statements of Erika as related to Dr. Baker is without merit.
Next, we address appellant's contention that the trial court erred in allowing Dr. Baker to offer an opinion as to the identity of the perpetrator of abuse. Appellant cites two cases in support of her contentions: State v. Sowers (1998), 81 Ohio St.3d 260, and State v. Boston (1989), 46 Ohio St.3d 108.
We note initially that, pursuant to Evid.R. 704, opinion testimony form an expert is not objectionable simply because it embraces an ultimate issue in the case. Turning our attention then to the cases appellant has cited to support her contentions, we note that both cases fail to address whether or not it is proper for an expert in a child sexual abuse context to offer an opinion as to whether or not the child victim was credible or truthful when giving a statement to the expert.
Our review of the record reveals that at no time during the hearing did Dr. Baker offer an opinion or comment, either directly or indirectly, on the veracity or credibility of Erika's statements to her. Accordingly, we are not convinced that it was error for the trial court to allow Dr. Baker to testify as she did.
Furthermore, when Dr. Baker offered her opinion as to the identity of the perpetrator of abuse, appellant did not lodge an objection. Assuming, arguendo, that it was error to allow Dr. Baker to testify as she did, we find that appellant's failure to object at the hearing, at a time when the trial court would have had an opportunity to either overrule or sustain the objection, is fatal to appellant's claim. "The general rule is that an appellate court will not consider any error which could have been, but was not, called to the attention of the trial court at a time when the error could have been avoided or corrected by the trial court." In reKeltner (Aug. 10, 1998), Butler App. No. CA97-10-188, unreported, at 17, citing In re Tackett (Mar. 7, 1990), Adams App. No. CA496, unreported. Accordingly, we find that appellant has waived any right to challenge this alleged error. Appellant's second assignment of error is overruled.
In her third assignment of error, appellant contends:
 THE COURT ERRED TO THE PREJUDICE OF GINA SPENDER WHEN IT PROCEEDED TO FIND RICK KING THE PERPETRATOR OF SEXUAL ABUSE OF A CHILD WITHOUT GRANTING HIM DUE PROCESS OF LAW.
Under this assignment of error, appellant argues that King was denied a full range of procedural rights contained within the due process clauses of both the federal and Ohio constitutions. Having argued that King's constitutional rights were violated, appellant then proceeds to argue that she suffered prejudice as a result of the deprivation of King's due process rights. Appellant's contentions under this assignment of error are without merit.
Initially, we must determine whether appellant has the requisite standing to raise this issue. "An appealing party may com-plain of an error committed against a nonappealingparty when the error is prejudicial to the rights of the appellant." In re Smith (1991), 77 Ohio App.3d 1, 13 (emphasis added). At first blush, it appears that this is exactly what appellant is contending. However, as admitted by appellant in her brief to this court, King was not a party to the matter now on appeal. Rather, King was merely a member of appellant's household and a witness who testified on her behalf. Because King was not a party below, he does not qualify as a nonappealing party in this appeal.
Furthermore, it is well-settled constitutional jurisprudence that "constitutional rights are personal rights which cannot be vicariously asserted." State v. Walker (June 5, 1987), Wood App. No. WD-86-32, unreported, at 17. Thus, appellant is not permitted to vicariously assert that King's constitutional due process rights were violated.
Because King was not a party to the proceedings below, and because appellant may not vicariously assert another's constitutional rights, we find that appellant lacks standing to raise this issue on appeal. Accordingly, appellant's third assignment of error is overruled.
Judgment affirmed.
POWELL, P.J., and WALSH, J., concur.
[1] At this point, we note that Boston has essentially been codified in Evid.R. 807, and although not a challenge raised by appellant, our review of Evid.R. 807 and the record reveal that the hearsay statements of Erika as related to Dr. Baker would be admissible under Evid.R. 807 as well.