OPINION
Defendant-appellant, Boardman Local Schools, appeals from a judgment rendered by the Mahoning County Common Pleas Court, finding it liable for injuries sustained by plaintiff-appellee, Gene P. Bionci, Sr., resulting from a slip and fall at Robinwood Elementary School. For the following reasons, the judgment of the trial court is reversed and this cause is remanded for a new trial.
 STATEMENT OF FACTS
On February 4, 1992, Mr. Bionci took his son, Gene P. Bionci, Jr., to Robinwood Elementary School to have pictures taken with his basketball team followed by a brief practice session. Once all of the photos had been taken and the practice had concluded, Mr. Bionci proceeded out the front door of the school and down the sidewalk toward the lot where he had parked his vehicle. With his son on his left-hand side, Mr. Bionci advanced down the walkway and attempted to make a right-hand turn when he suddenly slipped and fell.
While on the ground, Mr. Bionci looked down at his ankle and noticed that it was undoubtedly broken. When he could not get up, he sent his son back into the school to get help. Shortly after he was assisted back into the school, his wife, plaintiff-appellee Grace Bionci arrived and transported him to the emergency room at St. Elizabeth's Hospital. Once at the hospital, his ankle was examined. Surgery was performed the following day.
On May 13, 1992, Mr. and Mrs. Bionci filed a complaint alleging negligence on the part of appellant. Their complaint specifically alleged that appellant acted in a negligent manner by failing to properly remove ice and snow from the sidewalk and in failing to provide adequate lighting. They claimed that Mr. Bionci's injury resulted from such negligence. Appellant answered the complaint on July 21, 1992 denying any liability.
In a separate action, appellant's insurer, Nationwide Insurance Company, filed a complaint against Allstate Insurance Company, as insurer for Boardman Junior Basketball League, to determine which insurer would bear responsibility for the incident. After declaratory judgment was entered in that action, the Bioncis' case proceeded to trial.
Both at the conclusion of the Bioncis' case in chief and at the conclusion of all evidence, appellant moved for a directed verdict. At both junctures, the trial court overruled such motions.
Prior to trial, appellant filed written requests for special jury instructions. However, the trial court refused to issue those instructions to the jury. Additionally, appellant requested that special interrogatories be submitted to test the jury's verdict, but the trial court also refused to provide the jury with these interrogatories.
On December 15, 1999, the jury returned a verdict in favor of the Bioncis, finding Mr. Bionci ten percent comparatively negligent and appellant ninety percent negligent. Based on said verdict, the trial court awarded Mr. Bionci $55,000 and Mrs. Bionci $5,000.
Post-trial motions were filed by both parties. The Bioncis filed a motion for prejudgment interest, while appellant moved to deduct collateral benefits from the amount of the final award. Upon hearing argument by both parties on each motion, the trial court sustained the Bioncis' motion and overruled appellant's motion. This appeal followed.
 ASSIGNMENT OF ERROR NUMBER ONE
Appellant sets forth five assignments of error on appeal. Appellant's first assignment of error alleges:
 "THE TRIAL COURT ERRED IN OVERRULING BOARDMAN SCHOOLS' MOTION FOR DIRECTED VERDICT."
 LAW AND ANALYSIS
Motions for directed verdicts are provided for in Civ.R. 50(A)(4) which states as follows:
 "When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
The standard for appellate review on a motion for directed verdict isde novo. When a motion for directed verdict is filed, the court is faced with the legal question of whether sufficient evidence has been presented to submit the case to a jury. Wagner v. Midwestern Indem. Co. (1998),83 Ohio St.3d 287, 294. In order to grant a motion for directed verdict, the court must construe the evidence in the light most favorable to the nonmovant and find that reasonable minds could only come to a conclusion that is adverse to the nonmovant on a determinative issue. Civ.R. 50(A)(4). In applying this standard, it is well established that a court must neither consider the weight of the evidence nor the credibility of the witnesses. Audia v. Rossi Bros. Funeral Home, Inc. (Dec. 4, 2000), Mahoning App. No. 98CA181, unreported. The evidence must be construed most strongly in favor of the nonmovant. Id. Furthermore, a motion for directed verdict tests the legal sufficiency of the evidence and, thus, presents a question of law, even though it is necessary to review and consider the evidence when deciding the motion. Bishop v. Munson Trans.,Inc. (1996), 109 Ohio App.3d 573, 576. The relevant inquiry is whether substantial competent evidence supports the position of the party opposing the motion so that reasonable minds might reach different conclusions. Apel v. Katz (1998), 83 Ohio St.3d 11, 19.
The essential elements of a negligence cause of action are duty, breach of duty, proximate cause, and damages. Anderson v. St. Francis-St. GeorgeHosp., Inc. (1996), 77 Ohio St.3d 82, 84. The crux of appellant's argument herein revolves around the Bioncis' alleged failure to establish a duty. Specifically, appellant contends that it had no affirmative duty to clear the walkway or illuminate the parking lot.
Mr. Bionci pointed to two factors which caused his fall: inadequate lighting and an icy sidewalk. Appellant states that Ohio law does not impose a duty to provide outside lighting. Additionally, appellant argues that the ice upon which Mr. Bionci slipped and fell was a natural accumulation and, as a matter of law, appellant had no duty to remove a natural accumulation of ice or snow. Therefore, appellant maintains that the trial court should have sustained its motion for a directed verdict.
 A. LIGHTING
Appellant's argument as to the question of adequate lighting relies upon the Ohio Supreme Court's decision in Jeswald v. Hutt (1968),15 Ohio St.2d 224. In Jeswald, the Court held that "one who maintains a private motor vehicle parking area, for the accommodation of those he serves in a professional or business way, is generally under no legal obligation to illuminate the same at night * * *." Id. at paragraph one of the syllabus. Furthermore, no precedent exists to establish that once some light is provided, the owner of the premises has a duty to provide "adequate" lighting. Meilink v. AAA Northwest Ohio (Dec. 4, 1998), Lucas App. No. L-98-1139, unreported. The amount of light in a given area is an open and obvious condition. Id. Darkness itself constitutes a sign of danger, and the person who disregards a dark condition does so at his or her own peril. Sanders v. Anthony Allega Contractors (Dec. 30, 1999), Cuyahoga App. No. 74953, unreported. Therefore, appellant correctly states that it could not have been found liable based upon its failure to illuminate the parking lot. However, our inquiry does not end here.
 B. ICY SIDEWALK
In Ohio, an owner of a business owes a duty to exercise reasonable care in maintaining the premises in a safe condition for the use of business invitees. Perry v. Eastgreen Realty Co. (1978), 53 Ohio St.2d 51, 53. However, the Ohio Supreme Court has held on repeated occasions that this duty does not extend to natural accumulations of ice and snow. To the contrary, an owner of property is not liable for injuries to business invitees who slip and fall on natural accumulations of ice. LaCourse v.Fleitz (1986), 28 Ohio St.3d 209, 210. "The common thread running through these cases is the principle that the owner or occupier has a right to assume that his visitors will appreciate the risk and take action to protect themselves accordingly." Id. Liability will only be found to attach under circumstances where the individual may not reasonably be expected to discover or fully appreciate the risk before him. Id. The Ohio Supreme Court has long recognized that the inclement weather in Ohio makes it difficult for a premises owner to continually patrol the area and remedy the conditions. Lopatkovich v. City of Tiffin (1986),28 Ohio St.3d 204, 206-07, citing Norwalk v. Tuttle (1906),73 Ohio St. 242, 245.
The courts have distinguished natural accumulation from unnatural accumulation. A natural accumulation of ice and/or snow has been determined to be that which accumulates as a result of an act of nature.Perazzo v. Dayton Hasty-Tasty, Inc. (1962), 119 Ohio App. 453, 458. In comparison, an unnatural accumulation is one that has been created by causes and factors other than the inclement weather conditions of low temperature, strong winds and drifting snow. Porter v. Miller (1983),13 Ohio App.3d 93, 95. Therefore, for an accumulation to be labeled as unnatural, causes other than meteorological forces of nature must be responsible. Id. Snow which melts and later refreezes into ice is considered a natural accumulation of ice caused by forces of nature. SeeKinkey v. Jewish Hospital Assn. of Cincinnati (1968), 16 Ohio App.2d 93,96.
In the event a property owner voluntarily chooses to remove a natural accumulation of ice or snow he may not create a dangerous or unnatural accumulation or be actively negligent in permitting one to exist.Lopatkovich, supra at 207. In cases which involve an unnatural accumulation of ice as the cause of a fall, a plaintiff must show that: (1) the defendant created or aggravated the hazard; (2) the defendant knew or should have known of the hazard; and (3) the hazardous condition was substantially more dangerous than it would have been in the natural state. Myers v. Forest City Enterprises, Inc. (1993), 92 Ohio App.3d 351,353-54.
Construing the evidence most strongly in favor of the Bioncis, as we must, sufficient evidence was present by which the jury could, and in fact did, render a verdict in their favor. Frank Gustinella, the school's custodian, testified that when snow accumulated on the walkway, he shoveled it. (Tr. 129). He noted that he used a large, plywood scraper to push the snow into piles along the walkway. (Tr. 129). On the date Mr. Bionci fell, banks of snow had formed into ice along the side of the walkway. (Tr. 130). Concerning the vicinity in which the accident occurred, Mr. Gustinella testified as follows:
"Q. Ice had accumulated there before?
 A. Every year when you throw it there, there's ice there in freezing weather.
* * *
Q. That's an area where you know ice accumulated?
A. Yeah. Yeah.
 Q. And the reason you knew it accumulated there, when you throw the snow, slush or ice off, that's where you would throw it and ice would form in that area?
A. That's right." (Tr. 151-52).
Though such evidence is not overwhelmingly convincing to determine whether Mr. Bionci's fall was caused by a natural or an unnatural accumulation of ice or snow, it is adequate to survive a motion for directed verdict. The jury had sufficient evidence by which to find that appellant created a condition substantially more dangerous than the natural condition. As mentioned above, it is not the duty of this court to consider the weight of the evidence or the credibility of the witnesses. Audia, supra. Rather, we must presume the truth of the evidence supporting the Bioncis' contention and give them the benefit of all reasonable inferences from such evidence. Titanium Industries v.S.E.A., Inc. (Jan. 29, 1997), Mahoning App. No. 94CA130, unreported. In doing so, we find that substantial, competent evidence supports the Bioncis' position such that reasonable minds could, and did, reach a different conclusion than the one suggested by appellant.
Appellant's first assignment of error is without merit.
 ASSIGNMENT OF ERROR NUMBER TWO
Appellant's second assignment of error alleges:
 "THE TRIAL COURT ERRED TO THE PREJUDICE OF BOARDMAN SCHOOLS BY FAILING TO INSTRUCT THE JURY ON THE APPLICABLE LAW ON DARKNESS AND LIGHTING IN AN OUTDOOR COMMON AREA."
Throughout the course of trial, the Bioncis persistently sought to demonstrate that appellant did not exercise due care and, thus, was negligent by failing to adequately illuminate the walkway upon which appellee slipped and fell. (Tr. 110, 142-43, 371-72). In an attempt to refute such an argument, appellant sought to have the jury instructed as to its lack of a duty to provide lighting. However, the trial court refused to give appellant's instruction and, instead, instructed the jury that appellant had an ordinary duty of care.[1] As a result of this ruling, appellant alleges that the jury's verdict is not supportable because the jury was misled by erroneous instructions. Specifically, appellant maintains that the trial court erroneously framed the issues in a way that suggested appellant owed a duty of ordinary care to provide outdoor lighting and, therefore, left the jury with an improper understanding of the law governing darkness and outdoor lighting.
 LAW AND ANALYSIS
Pursuant to Civ.R. 51(A), any party may file a written request to the trial court to instruct the jury on the law as set forth in the request. However, the trial court is not required to charge the jury with the requested instruction. In Murphy v. Carrolton Mfg. Co. (1991),61 Ohio St.3d 585, 591, the Supreme Court noted:
 "It is well established that the trial court will not instruct the jury where there is no evidence to support an issue. However, the collorary of this maxim is also true. Ordinarily requested instructions should be given if they are correct statements of the law applicable to the facts in the case and reasonable minds might reach the conclusion sought by the instruction." (Citations omitted).
The goal and duty of the trial court is to give the jury a plain, distinct, and unambiguous statement of the law relevant to the case at hand. Marshall v. Gibson (1985), 19 Ohio St.3d 10, 12. Ordinarily, a trial court should give a party's requested instructions if they further that goal.
Murphy, supra. This court cannot observe a single, challenged jury instruction piecemeal or in isolation, but must review it in the context of the entire charge. State v. Hardy (1971), 28 Ohio St.2d 89, 92. Reversible error exists only when a failure to give instructions misleads the jury.
Kokitka v. Ford Motor Co. (1995), 73 Ohio St.3d 89, 93.
Thus, the proper standard of review for an appellate court is whether the trial court's refusal to give an instruction amounted to an abuse of discretion under the facts and circumstances of the case. State v.Wolons (1989), 44 Ohio St.3d 64, 68. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable.
Tracy v. Merrill-Dow Pharmaceuticals, Inc. (1991), 58 Ohio St.3d 147.
Relying on the Ohio Supreme Court's decision in Jeswald, supra, appellant sought to have the following instruction submitted to the jury:
 "Darkness is always a warning of danger, and for one's own protection, it may not be disregarded.
 A landowner who maintains a parking area for the accommodation of invitees is under no legal duty to illuminate the area at night."
In summarily refusing to give the aforementioned instruction, the trial court stated:
 "I am not going to give the Defendant's Proposed Jury Instruction No. 8, which is a duty on lighting, which is darkness is always a warning of danger and for one's own protection, it may not be disregarded. A landowner who maintains a packing (sic) area for the accommodation of invitees is under no legal duty to illuminate the area at night, [J]eswald v. Hutt, Ohio State 2d 224. * * *." (Tr. 349).
As a result of such refusal, the trial court did not provide the jury with a direct instruction regarding appellant's duty, or lack thereof, to provide light. Rather, the trial court instructed the jury as to ordinary care and premises liability. In accordance with the Ohio Supreme Court's ruling in Jeswald, appellant had no legal duty to illuminate the premises. Jeswald, supra at paragraph one of the syllabus. Nonetheless, evidence of the parking lot's darkness was presented throughout the trial. Without the instruction proposed by appellant, it is impossible to know whether the jury based its determination on such evidence. Indeed, given the focus of the evidence presented on behalf of the plaintiffs concerning inadequate lighting, and in the absence of any limitations concerning the legal parameters of "ordinary care", it is not unthinkable for the jury to conclude that "a reasonably cautious and prudent person" would illuminate a parking lot.
Here, the instruction tendered by appellant to the trial court was a correct statement of the law applicable to the facts of the case. Additionally, the jury may have reached the conclusion sought by the instruction. Thus, the trial court should have submitted it to the jury.Murphy, supra at 591. Given the nature of the evidence presented at trial informing the jury of appellant's failure to illuminate the parking lot, the trial court should have instructed the jury as requested by appellant. In failing to do so, the court abused its discretion and, thus, misled the jury as to appellant's duty or lack thereof to illuminate the walkway.
Appellant's second assignment of error is found to be with merit. In light of the prejudicial effect that the trial court's error had on appellant, this case must be remanded for a new trial.
 ASSIGNMENTS OF ERROR NUMBERS THREE THROUGH FIVE
Appellant's third, fourth and fifth assignments of error respectively allege:
 "THE TRIAL COURT ERRED IN REFUSING TO SUBMIT WRITTEN INTERROGATORIES PROPOUNDED BY BOARDMAN SCHOOLS."
 "THE TRIAL COURT ERRED IN AWARDING THE BIONCI'S (SIC) PREJUDGMENT INTEREST."
 "THE TRIAL COURT ERRED IN REFUSING TO REQUIRE MR. BIONCI TO DISCLOSE BENEFITS FROM THE JURY'S VERDICT."
Given our determination regarding appellant's second assignment of error, we are unable to address assignments of error numbers three through five as their resolution requires a judgment in the underlying case. Any efforts by this court to do so would constitute an impermissible advisory opinion.
N. Canton v. Hutchinson (1996), 75 Ohio St.3d 112, 114.
For the foregoing reasons, because the trial court committed prejudicial error when it instructed the jury, the trial court's judgment is reversed and this cause is remanded for a new trial according to law and consistent with this court's opinion.
DeGenaro, J., concurs.
O'Neill, J., concurs.
[1] "Negligence is a failure to use ordinary care. Every person is required to use ordinary care to avoid injuring another person or another person's property. Ordinary care is defined as the care that a reasonably cautious and prudent person would use under the same or similar circumstances." (Tr. 431).
"The owner or occupant of the premises owes a duty to an invitee to use ordinary care for the invitee's or visitor's safety, to keep the premises in a reasonably safe condition, and to use ordinary care to provide notice of any concealed dangers of which the owner or occupant of the premises has knowledge, or which by using ordinary care should have discovered." (Tr. 433-34).