[Cite as *State v. Davis*, 2012-Ohio-5756.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-120076 |
| | | TRIAL NOS. B-1104965 |
| Plaintiff-Appellee, | : | B-1104966 |
| vs. | : | |
| | | *O P I N I O N.* |
| ANDRE DAVIS, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  December 7, 2012

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *James Michael Keeling*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Christine Y. Jones*, for Defendant-Appellant.

Please note:  This case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1}    Following a jury trial, defendant-appellant Andre Davis was convicted of fourteen counts of felonious assault, each in violation of R.C. 2903.11(B)(1).  This statute prohibits any person with knowledge that he or she has tested positive as a carrier of a virus that causes acquired immunodeficiency syndrome ("AIDS") from engaging in sexual conduct with another person before disclosing that knowledge to the other person.  Davis was sentenced to an aggregate prison term of 32 years, and this appeal followed.  For the following reasons, we affirm the judgment of the trial court.

### Facts and Procedural Posture

{¶2}    In October 2011, the Hamilton County Grand Jury returned two indictments together charging Davis with 15 counts of felonious assault.  The charges stemmed from allegations of 15 sexual encounters with 12 women that occurred between September 2009 and April 2011.

{¶3}    At trial, Alex Uehline testified that she had moved in with Davis in February 2009.  Around the same time, Davis was attempting to secure employment with World Wrestling Entertainment ("WWE") as either a wrestler or a referee.  A few months later, Davis received a physical examination in connection with his WWE application.  Following that examination, in July 2009, Davis texted Uehline that he had tested positive for "HIV."  Shortly thereafter, Uehline discovered a laboratory report in their home indicating that Davis was HIV positive.  The report was authenticated as a record of regularly conducted activity under Evid.R. 803(6) and 901(B)(10) by Nancy Kreuger, a compliance officer for Quest Diagnostics, which performs laboratory tests for physicians.  Dr. William Ralston later interpreted that

2

report and testified that HIV, also known as the human immunodeficiency virus, is a retrovirus that causes AIDS.

{¶4} According to Uehline, in December 2009, the couple sought information about the pathogen from an organization known as STOP AIDS. They spoke with Phyllis Leathers, who testified that "[i]t was a requirement to be diagnosed with the HIV virus to even be a client at STOP AIDS." Leathers further stated that she had informed Davis about the criminal implications of having sex without disclosing his HIV status, and that Davis had signed a document acknowledging that he was "requesting medical case management services and supportive services offered by STOP AIDS."

{¶5} Twelve women then testified that they had engaged in a total of 15 sexual encounters with Davis: one in September 2009, one in March 2010, one in September 2010, three in December 2010, one in January 2011, three in February 2011, one in March 2011, and four in April 2011. Each woman claimed that Davis had failed to notify her before each sexual encounter that he was HIV positive.

{¶6} The jury ultimately found Davis guilty of 14 of the 15 felonious-assault counts. He was found not guilty, however, on the count concerning the September 2009 allegation. The trial court sentenced him to an aggregate prison term of 32 years, and this appeal followed. Davis raises six assignments of error.

### Sufficiency and Weight of the Evidence

{¶7} In his first, second, and third assignments of error, Davis argues that his convictions were not supported by sufficient evidence and were contrary to the manifest weight of the evidence, and also that the trial court erred in denying his Crim.R. 29 motion for acquittal. We consider these assignments of error together.

{¶8}     When we review the sufficiency of the evidence supporting a conviction, "the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). *See State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997) ("In essence, sufficiency is a test of adequacy."). We apply the same standard of review when deciding whether a trial court erred in denying a motion for acquittal under Crim.R. 29. *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37. But when considering whether a conviction was contrary to the manifest weight of the evidence, we must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See Thompkins* at 387 ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.").

{¶9}     Davis maintains that there was no evidence presented at trial that he knew he was a carrier of a virus that causes AIDS. He specifically contends that (1) there was no evidence that he had seen the laboratory report found by Uehline; (2) even if he had seen the laboratory report, the document indicated only that he had tested positive for antibodies that attack HIV, not HIV itself; and (3) even if he had known that he was a carrier of HIV, he is not criminally culpable under R.C.

2903.11(B)(1) because the pathogen is a *retrovirus* and, therefore, not a *virus* that causes AIDS.

{¶10} These arguments are without merit. We first recognize that the laboratory report was not the only evidence presented to show that Davis knew he was a carrier of HIV. For instance, Uehline testified that Davis had texted her in July 2009 that he was HIV positive, and that in December 2009, she and Davis had sought information about HIV and AIDS from STOP AIDS. In addition, Phyllis Leathers testified that when the couple visited STOP AIDS, she had informed Davis about the criminal implications of having sex without disclosing his HIV status, and that Davis had signed a document acknowledging his request for "medical case management services and supportive services offered by STOP AIDS."[1] Furthermore, we reject Davis's tenuous assertion that R.C. 2903.11(B)(1) does not implicate those who merely carry HIV. As Dr. Ralston testified, retroviruses *are* viruses, and HIV is a retrovirus that causes AIDS.

{¶11} Based on the foregoing and the record before us, we conclude that a rational trier of fact could have found the essential elements of each offense proven beyond a reasonable doubt, and that the jury neither clearly lost its way nor created a manifest miscarriage of justice in convicting Davis of 14 counts of felonious assault. The first, second, and third assignments of error are, therefore, overruled.

## Excessive Sentence

{¶12} In his fourth assignment of error, Davis maintains that the trial court erred in imposing a sentence in violation of R.C. 2953.08(C)(1). This statute provides that a defendant convicted of a felony "may seek leave to appeal a sentence imposed

---

[1] Notably, Davis was convicted of only those felonious-assault charges that concerned alleged sexual encounters after he had met with Leathers.

upon the defendant on the basis that the sentencing judge has imposed consecutive sentences * * * and that the consecutive sentences exceed the maximum prison term allowed by [R.C. 2929.14(A)] for the most serious offense of which the defendant was convicted." Davis argues that because his "most serious offense" was felonious assault, a felony of the second-degree under R.C. 2903.11(D)(1)(a), the trial court erred in imposing more than the maximum eight-year prison term allowed by R.C. 2929.14(A)(2) for such a felony.

{¶13} We disagree. Instead we follow the great weight of authority in Ohio and hold that R.C. 2953.08(C)(1) does not limit a sentencing court's discretion to impose consecutive sentences. *State v. Owens*, 5th Dist. No. 11-COA-37, 2012-Ohio-2951, ¶ 15; *State v. Nicely*, 6th Dist. No. F-09-14, 2010-Ohio-2797, ¶ 28-29; *State v. Gonzalez*, 3d Dist No. 1-98-84, 1999 Ohio App. LEXIS 3103, *3-4 (Jun. 30, 1999); *State v. Haines*, 10th Dist. No. 98AP-195, 1998 Ohio App. LEXIS 5332, *16 (Oct. 29, 1998). Instead, the statute merely provides an opportunity to seek leave to appeal. *See Owens* at ¶ 15; *Haines* at *16.

{¶14} Our interpretation is bolstered by the fact that R.C. 2929.14(C)(4), which authorizes sentencing courts to impose consecutive prison terms subject to certain findings, neither refers to R.C. 2953.08(C)(1) nor bars the imposition of aggregate prison terms in excess of the most serious offense of which the defendant was convicted. Moreover, to construe the statute as Davis advocates "would demean the sentencing process to the point that it would permit one person to receive a maximum sentence for committing one felony while allowing another person to receive only the same maximum sentence for committing one hundred similar felonies." *Haines* at *16. The fourth assignment of error is, therefore, overruled.

### The Laboratory Report

{¶15}    In his fifth assignment of error, Davis argues that the trial court erred in admitting the laboratory report that Uehline found in their home as a record of regularly conducted activity, i.e. a business record, because Nancy Kreuger of Quest Diagnostics was not the record's custodian.  "The admission of evidence is generally within the sound discretion of the trial court, and a reviewing court may reverse only upon the showing of an abuse of that discretion."  *Peters v. Ohio State Lottery Comm.*, 63 Ohio St.3d 296, 299, 587 N.E.2d 290 (1992) (applying this standard in reviewing the admission of business records under Evid.R. 803(6)).

{¶16}    Under Evid.R. 803,

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness: * * *
>
> (6)    A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

**{¶17}** It is widely recognized that the term "qualified witness" should be interpreted broadly to include those witnesses who are

> sufficiently familiar with the operation of the business and with the circumstances of the record's preparation, maintenance and retrieval, that he [or she] can reasonably testify on the basis of this knowledge that the record is what it purports to be and that it was made in the ordinary course of business consistent with the elements of Rule 803(6).

*State v. Vrona*, 47 Ohio App.3d 145, 148, 547 N.E.2d 1189 (9th Dist.), quoting 1 Weissenberger's Ohio Evidence 76, Section 803.79 (1985). *Accord State v. Blake*, 2012-Ohio-3124, 974 N.E.2d 730, ¶ 29 (12th Dist.); *Deutsche Bank Natl. Trust Co. v. Hansen*, 5th Dist. No. 2010-CA-1, 2011-Ohio-1223, ¶ 26; *State v. Wagner*, 8th Dist. No. 93432, 2010-Ohio-2221, ¶ 25; *State v. McGhee*, 3d Dist. No. 13-08-12, 2009-Ohio-4259, ¶ 38; *Greenwood Rehab., Inc. v. Thacker*, 6th Dist. No. L-03-1213, 2004-Ohio-1643, ¶ 18; *State v. Myers*, 153 Ohio App.3d 547, 2003-Ohio-4135, 795 N.E.2d 77, ¶ 60 (10th Dist.); *State Farm Fire & Cas. Ins. Co. v. Kall*, 11th Dist. No. 98-G-2203, 2000 Ohio App. LEXIS 1402, *23 (Mar. 31, 2000); *State v. Hirtzinger*, 124 Ohio App.3d 40, 49, 705 N.E.2d 395 (2d Dist.1997); *Bishop v. Munson Transp., Inc.*, 109 Ohio App.3d 573, 579, 672 N.E.2d 749 (7th Dist.1996).

**{¶18}** In her testimony, Kreuger demonstrated that she was familiar with the operations of Quest Diagnostics, the generation of its laboratory reports, and the procedures for retrieving those reports. We, therefore, cannot say that the trial court abused its discretion in concluding that Kreuger could authenticate the record as a

qualified witness under Evid.R. 803(6).  *See* Evid.R. 901(B)(1o).  The fifth assignment of error is, therefore, overruled.

## Constitutionality of R.C. 2903.11(B)

{¶19}  In his sixth assignment of error, Davis argues that R.C. 2903.11(B) is unconstitutional.  He maintains that (1) the statute's notification requirement violates his freedom of speech under the First Amendment to the United States Constitution; (2) the statute impermissibly singles out the conduct of those who carry a virus that causes AIDS as opposed to other viruses under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Ohio Constitution, Article I, Section 16; and (3) the statute is void for vagueness.

{¶20}  We note, however, the record for the cases now on appeal does not reflect that Davis challenged the constitutionality of R.C. 2903.11(B)(1) before the trial court.  He has, therefore, waived these issues on appeal.  *See State v. Awan*, 22 Ohio St.3d 120, 489 N.E.2d 277 (1986), syllabus ("Failure to raise at the trial court level the issue of the constitutionality of a statute or its application, which issue is apparent at the time of trial, constitutes a waiver of such issue and a deviation from this state's orderly procedure, and therefore need not be heard for the first time on appeal.").

{¶21}  Davis and the state have attempted to circumvent this waiver rule by filing a joint stipulation under App.R. 9(E).  It states:

1. The original record contained all materials from the trial court in Case Nos. B-1104965 and B-1104966.

2. However, upon conferring with Mr. Davis's second trial counsel regarding the issues in this case, appellate counsel discovered that the cases had originated with Case Nos. B-1102382 and B-1104966; the only reason

the cases were re-indicted was to add the *mens rea* of "knowingly" to both cases.

3. Upon review of the documents filed in those original case numbers, it is apparent and the parties stipulate that those records be included in the instant appeal, especially Mr. Davis' Motions to Dismiss based on constitutional issues regarding R.C. Section 2903.11(B). These omitted documents from Case Nos. B-1102382 and B-1102774 are attached hereto.

{¶22} Under App.R. 9(E), "[i]f anything material to either party is omitted from *the record* by error or accident or is misstated, the parties by stipulation * * * may direct that omission or misstatement be corrected, and if necessary that a supplemental record be certified, filed, and transmitted." (Emphasis added.). App.R. 9(A), meanwhile, defines "the record" as "[t]he original papers and exhibits thereto filed in the trial court, the transcript of proceedings, if any, including exhibits, and a certified copy of the docket and journal entries prepared by the clerk of the trial court."

{¶23} Davis and the state concede in their joint stipulation, however, that the "original record contained all materials" filed in the cases now on appeal. The materials attached to their joint stipulation, therefore, cannot constitute an omission "by error or accident" from the "original papers and exhibits thereto filed in the trial court" under App.R. 9. Thus, we must not consider them. *See Entingh v. Old Man's Cave Chalets, Inc.*, 4th Dist. No. 08CA14, 2009-Ohio-2242, ¶ 10 ("App.R. 9(E) is only applicable when the materials that are missing or omitted were actually part of the record in the trial court."); *Pailet v. Univ. of Cincinnati Hosp.*, 10th Dist. No. 82AP-952, 1983 Ohio App. LEXIS 16069, *5 (Jun. 30 1983) ("[App.R.9(E)] permits addition of only matter

10

'material to either party,' which has been 'omitted from the record by error or accident.' This means matter which has been omitted from the record on appeal, not matter which the party failed to present to the trial court."); *see generally State v. Ishmail*, 54 Ohio St.2d 402, 377 N.E.2d 500, (1978) paragraph one of the syllabus ("A reviewing court cannot add matter to the record before it, which was not part of the trial court's proceedings, and then decide the appeal on the basis of the new matter."). To do otherwise would disrupt our constitutional function to review the judgments of trial courts by inviting, in essence, advisory opinions based on records not considered by the trial courts, but rather on those manufactured post hoc by the parties. *See* Ohio Constitution, Article IV, Section 3(B)(2).

{¶24} The sixth assignment of error is, therefore, overruled, and the judgment of the trial court is affirmed.

Judgment affirmed.

**HILDEBRANDT, P.J.,** and **SUNDERMANN, J.,** concur.

Please note:
    The court has recorded its own entry this date.