DONALDSON, Appellant,

v.

NORTHERN TRADING COMPANY et al.; Elevators, Inc., Appellee.

KEARNS et al., Appellants,

v.

NORTHERN TRADING COMPANY et al.; Elevators, Inc., Appellee.

[Cite as *Donaldson v. N. Trading Co.* (1992), 82 Ohio App.3d 476.]

Court of Appeals of Ohio,
Franklin County.

Nos. 91AP–1474, 91AP–1475.

Decided Sept. 15, 1992.

478

Bradley, Topper & Farris and Richard D. Topper, for appellants.

Earl, Warburton, Adams & Davis and Thomas L. Davis, for appellee Elevators, Inc.

PETREE, Judge.

Plaintiffs, Brian Donaldson and Glenn Kearns, appeal from a directed verdict granted by the Franklin County Court of Common Pleas in favor of defendant, Elevators, Inc. The primary issue in this appeal concerns the rule forbidding the drawing of one inference solely and entirely from another inference. Because reasonable minds could find in plaintiffs' favor without impermissibly stacking one inference upon another, we reverse and remand for further proceedings.

Plaintiffs commenced this suit alleging that they sustained injuries on August 27, 1987 when the elevator in which they were riding jerked suddenly to a stop. Among the named defendants was Elevators, Inc., the company retained to service the elevator in question. Plaintiffs alleged that their

injuries were caused by defendant's negligent maintenance of the elevator six days prior to the accident. The other defendants, including the building owner, Northern Trading Company, were later dismissed from the case.

At trial, plaintiffs testified that they entered the elevator on the fifth floor in the company of three other people. In addition, there was an elevator operator already in the elevator. Altogether, Donaldson estimated that the six people in the elevator weighed approximately one thousand one hundred pounds. After the doors closed, plaintiffs testified that the elevator descended rapidly for several floors before coming to an abrupt stop. As a result, both plaintiffs claimed to suffer severe pain in various portions of their bodies.

The elevator in which plaintiffs were injured has a rated load of two thousand pounds and is designed to travel at an average speed of three hundred fifty feet per minute. The elevator is also equipped with a safety device known as an overspeed switch. This device is designed to interrupt the flow of electrical power to the motor whenever the elevator's speed exceeds four hundred ten feet per minute. Once the power is disconnected, a mechanical brake sets automatically, bringing the elevator to a rapid stop.

Defendant was exclusively responsible for the maintenance of the elevator. Defendant had most recently serviced the elevator on August 21, 1987, six days prior to the incident from which this suit arose. On that day, defendant had reinstalled the elevator motor, which had been damaged following a fire in the building next door. Defendant performed no further work on the elevator until August 28, 1987. Responding to a trouble call placed by the building owner, defendant's maintenance engineer, Dick Albright, found that the overspeed switch had tripped. He reset the switch and briefly tested the elevator's operation. Finding no obvious cause for the overspeed, Albright was instructed to take the elevator out of service until the rectifier could be inspected. When the rectifier was found to be in good working order, the company president, Joe Harper, had the elevator returned to service.

To establish the cause of the overspeed, plaintiffs introduced the testimony of an expert witness, Robert Lauer. A registered electrical engineer, Lauer had substantial experience in the design, installation and maintenance of elevators and escalators. He explained that there are only three ways in which an overspeed can occur: (1) an overloaded elevator, (2) increased voltage, and (3) reduced motor field current. As Donaldson had testified that the elevator passengers collectively weighed only about fifty percent of the elevator's rated load, Lauer excluded this as a potential cause of the overspeed. Lauer also explained that a voltage surge could not cause an overspeed in this particular elevator design unless the rectifier was not operating

properly. Because the rectifier was in good operating condition when it was inspected by defendant, Lauer also excluded this possibility.

Having excluded two of three possible causes, Lauer concluded that reduced motor field current must have caused the overspeed. Lauer testified that reduced motor field current may be caused by loose or faulty electrical connections. After examining the elevator, he also observed that defendant had not used lock washers when making electrical connections to the motor. In Lauer's opinion, good maintenance practice required the use of lock washers when making electrical connections to a vibrating piece of machinery like an elevator motor. Given the fact that the motor was reinstalled only six days before the accident, Lauer testified that a loose or faulty electrical connection was the most probable cause of the overspeed. Because the standard of care requires the use of solid electrical connections, Lauer concluded that defendant's negligence was the direct and proximate cause of plaintiffs' injuries.

At the close of plaintiffs' case, defendant moved for a directed verdict. Explaining that plaintiffs' proof of negligence impermissibly stacked one inference upon another, the trial court granted the motion. From that judgment, plaintiffs filed this timely appeal, asserting a single assignment of error:

"In a case brought by two injured people, for their injuries which were caused by the negligent maintenance of an elevator, the trial court erred in granting a directed verdict in favor of the elevator maintenance company when expert and lay testimony showed there was evidence upon which reasonable minds could differ that the maintenance company failed in [its] duty to properly maintain an elevator in which the two people were injured."

When reviewing a directed verdict, we apply the same standard as that employed by the trial court. The evidence is construed most strongly for the nonmoving party, who is also given the benefit of all reasonable inferences from the evidence. *Ruta v. Breckenridge–Remy Co.* (1982), 69 Ohio St.2d 66, 68, 23 O.O.3d 115, 116, 430 N.E.2d 935, 937. The court should consider neither the weight of the evidence nor the credibility of the witnesses. *Osler v. Lorain* (1986), 28 Ohio St.3d 345, 28 OBR 410, 504 N.E.2d 19, syllabus. A motion for a directed verdict tests the legal sufficiency of the evidence to take the case to the jury. *Mayhorn v. Pavey* (1982), 8 Ohio App.3d 189, 191, 8 OBR 258, 260, 456 N.E.2d 1222, 1226. Under this standard, the motion must be denied if there is substantial evidence upon which reasonable minds could come to different conclusions on the essential elements of the claim. Civ.R. 50(A)(4); *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896, paragraph four of the syllabus.

■ Though widely denounced by both courts and legal commentators, the rule prohibiting the stacking of one inference upon another is still recognized in Ohio. *Motorists Mut. Ins. Co. v. Hamilton Twp. Trustees* (1986), 28 Ohio St.3d 13, 28 OBR 77, 502 N.E.2d 204. Nevertheless, the rule has very limited application. It prohibits only the drawing of one inference solely and entirely from another inference, where that inference is unsupported by any additional facts or inferences drawn from other facts. *Hurt v. Charles J. Rogers Transp. Co.* (1955), 164 Ohio St. 329, 58 O.O. 122, 130 N.E.2d 820, paragraph one of the syllabus. But the rule does not forbid the use of parallel inferences in combination with additional facts. *Id.* at paragraph two of the syllabus. Nor does it prohibit the drawing of multiple inferences separately from the same set of facts. *McDougall v. Glenn Cartage Co.* (1959), 169 Ohio St. 522, 9 O.O.2d 12, 160 N.E.2d 266, paragraph two of the syllabus. Because reasonable inferences drawn from the evidence are an essential element of the deductive reasoning process by which most successful claims are proven, the rule against stacking inferences must be strictly limited to inferences drawn exclusively from other inferences.[1]

■ While we agree that plaintiffs' proof of negligence relies on a series of three inferences, none of the three inferences is impermissibly drawn from another. The first inference—that the overspeed occurred—is based on Albright's testimony that the overspeed switch was found tripped on the day following the incident. The second inference—that reduced motor field current was the most probable cause of the overspeed—was based on the previous inference in conjunction with additional facts and inferences drawn from other facts. Lauer testified that an overspeed can occur in only three ways; Donaldson testified that the elevator passengers weighed only one thousand one hundred pounds; and Harper testified that the rectifier was operating properly. In the third and final inference, Lauer concluded that defendant's failure to make solid electrical connections caused the overspeed which resulted in plaintiffs' injuries. Like the others, this is a parallel inference based in part on a previous inference and in part on additional facts.

---

1. The case against the rule was recently summarized by the Supreme Court in *Motorists Mut. Ins. Co.,* 28 Ohio St.3d at 17, 28 OBR at 80, 502 N.E.2d at 207. Remarking on the rule's "dangerous potential for subverting the fact-finding process and invading the sacred province of the jury," the court cautioned against resorting to the rule too readily. *Id.* Too often, the rule forbidding the stacking of one inference upon another is used as a substitute for analysis, concealing the real issue before the court. To the extent the rule has any validity, it is merely a method by which speculative or unreliable inferences may be identified and excluded. But the same objective may be achieved more simply and reliably without resorting to artificial and overly rigid rules of logical analysis. The "reasonable minds" test of Civ.R. 50 is a more than adequate safeguard against claims founded on speculative or unreasonable inferences.

Specifically, the inference was drawn from the fact that the motor was reinstalled only six days prior to the incident and the fact that lock washers were not used on the electrical connections to the motor. An ultimate conclusion may be drawn from a series of inferences, provided no inference is based solely and entirely upon another. As each of the three inferences essential to plaintiffs' case are based on other facts and inferences drawn from those facts, this proof does not violate the rule against stacking inferences.

Plaintiffs' proof of negligence is also sufficient to allow reasonable minds to find in their favor. The essential elements of a negligence action are duty, breach of that duty, and injury resulting proximately therefrom. *Strother v. Hutchinson* (1981), 67 Ohio St.2d 282, 285, 21 O.O.3d 177, 179, 423 N.E.2d 467, 469; *Bell v. Giamarco* (1988), 50 Ohio App.3d 61, 62, 553 N.E.2d 694, 696. Defendant clearly owes a duty of reasonable care to persons using the elevators which it has agreed to maintain. Plaintiffs must also prove that by some act or omission defendant breached its duty of ordinary and reasonable care and that this breach was the direct and proximate cause of plaintiffs' injuries. If believed, Lauer's testimony is sufficient to establish a breach of duty. He testified that good maintenance practice required the use of lock washers on electrical connections made to an elevator motor and that defendant failed to use lock washers. Reasonable minds could conclude that the failure to follow good maintenance practice is a breach of the standard of care.

As for causation, Lauer concluded that a loose or faulty electrical connection was the most probable cause of the overspeed by excluding the other possible causes. This is an accepted and well-established method of proving causation. Where there are several possible explanations for an event, the elimination of the other possibilities necessarily acts as proof of the remaining possibility. *Westinghouse Elec. Corp. v. Dolly Madison Corp.* (1975), 42 Ohio St.2d 122, 127, 71 O.O.2d 85, 88, 326 N.E.2d 651, 655; *Gedra v. Dallmer Co.* (1950), 153 Ohio St. 258, 41 O.O. 274, 91 N.E.2d 256, paragraph two of the syllabus.

Relying on *State Farm Fire & Cas. Co. v. Chrysler Corp.* (1988), 37 Ohio St.3d 1, 523 N.E.2d 489, defendant maintains that circumstantial evidence alone is insufficient to sustain plaintiffs' burden of proving causation absent some direct evidence on this point. But *State Farm Fire & Casualty Co.* does not stand for this proposition. The court's ruling in that case was not premised merely on the absence of direct evidence, but on the absence of any probative evidence, direct or circumstantial, tending to eliminate a potential cause of the plaintiff's injuries for which the defendant was not liable.

Such is not the case here. Plaintiffs produced evidence tending to exclude all other potential causes of the overspeed. That this evidence was largely circumstantial is not fatal to plaintiffs' case. Circumstantial evidence is not inherently less reliable or certain than direct evidence. *State v. Jenks* (1991), 61 Ohio St.3d 259, 277, 574 N.E.2d 492, 505. Each is sufficient to support a verdict, provided reasonable minds can reach such a conclusion from the evidence and any reasonable inferences drawn therefrom. The weight to be accorded an inference is generally a question of fact. An inference will be disregarded as speculative only where, construing the evidence most strongly for the nonmoving party, reasonable minds cannot help but find that the inference is not supported by the greater weight of the evidence. *Fogle v. Cessna Aircraft Co.* (Jan. 16, 1992), Franklin App. No. 90AP–977, unreported, 1992 WL 10272, appeal pending in case No. 92–677. Because reasonable minds could draw the inferences essential to plaintiffs' case from the evidence presented at trial, defendant was not entitled to a directed verdict on this basis.

■ To prevent the reversal of the trial court's judgment, defendant has proposed two additional grounds upon which it maintains the trial court's judgment may be affirmed. The first of these issues concerns the "physical facts rule" announced in the syllabus of *McDonald v. Ford Motor Co.* (1975), 42 Ohio St.2d 8, 71 O.O.2d 4, 326 N.E.2d 252. That rule states:

"The testimony of witnesses which is positively contradicted by the established physical facts is of no probative value and a jury will not be permitted to rest a verdict thereon."

Defendant contends that Lauer's conclusion that there was a loose electrical connection is positively contradicted by the fact that the elevator ran properly when tested the next day by defendant's maintenance engineer. But Albright's testimony is not an established physical fact within the meaning of the rule. Though called during plaintiffs' case-in-chief, plaintiffs do not vouch for Albright's credibility or for the accuracy of his recollection. Furthermore, the fact that the elevator ran properly the next day does not necessarily exclude the possibility that there was a loose or faulty electrical connection. It is common knowledge that loose electrical connections often cause intermittent difficulty before they fail completely. As the "physical facts" upon which defendant relies are neither conclusively established nor necessarily inconsistent with Lauer's testimony, defendant's reliance on this rule is misplaced.

■ Alternatively, defendant maintains that Lauer's testimony should have been excluded because his opinions were not sufficiently based on facts in evidence. The admission or exclusion of expert testimony is generally a

matter committed to the sound discretion of the trial court. *Schaffter v. Ward* (1985), 17 Ohio St.3d 79, 17 OBR 203, 477 N.E.2d 1116. Lauer's conclusions were drawn from facts in evidence in conjunction with his own expertise. Defendant's complaints go primarily to the weight of Lauer's testimony, not its admissibility. As this is not a proper ground for excluding expert testimony, the trial court did not err in admitting Lauer's opinion.

Because the evidence is sufficient to support a verdict in plaintiffs' favor, the trial court erred in granting a directed verdict for defendant. Plaintiffs' assignment of error is sustained and the judgment of the trial court is reversed. The cause is remanded for further proceedings consistent with this opinion and in accordance with law.

*Judgment reversed*
*and cause remanded.*

JOHN C. YOUNG, P.J., and McCORMAC, J., concur.