DECISION AND JUDGMENT ENTRY
This is an appeal from a decision of the Lucas County Court of Common Pleas to grant a directed verdict to the driver of a car, Lynne Downes ("the driver"), who was sued after being involved in an accident where the car she was driving struck a pedestrian, Marvin Gagnet ("the pedestrian"), who was jaywalking across a four lane street. Because we find that the trial court did not err when it concluded that even when the evidence presented by the pedestrian was viewed in a light most favorable to the pedestrian, reasonable minds could only conclude there was no substantial evidence to show that the driver was negligent, we affirm the directed verdict granted to the driver by the trial court.
The facts pertinent to this appeal follow. When the trial began in this case, the pedestrian took the stand and testified on his own behalf. He explained that on the morning of the accident, he was on his way to work. He parked his vehicle in a parking lot across the street from his place of employment. He got out of his vehicle and began jaywalking across a street that had four lanes of traffic. He testified that he successfully crossed between the vehicles in the two lanes of eastbound traffic.
The pedestrian said he then looked to his right to make sure there was no traffic approaching in the westbound lanes. He said he was focused on an opening between two vehicles in the curb lane on the westbound side. He testified that he moved in a "fluid motion" and that he never stopped at any time from the time he stepped onto the street.
He said that as he crossed the center line and walked across the inside westbound lane, he was suddenly hit by a car.
He testified that he did not see or hear the car before he was hit. He also testified that he did not step in front of the car. On cross-examination, he admitted that if he had looked, he could have seen the car coming.
Next, the pedestrian called another driver who had witnessed the events leading up to the accident and the accident itself. The second driver testified that he was on his way to work and that he saw the pedestrian step out into the street and begin jaywalking across. The second driver was sitting in his vehicle in the westbound lane next to the curb. He said that he took his foot off the accelerator in his car, because he was nervous about the movements of the pedestrian on the street and did not want to hit the pedestrian with his car. He said he did not know how fast he was going, but he was coasting. Just as the pedestrian drew even with his car window, such that he could have shook hands with the pedestrian if he opened his car window, he saw, with his peripheral vision, a black or dark object approaching. He testified that the pedestrian was looking in the direction behind his car. He said he saw the pedestrian flip up and eventually land on the street between the his car and another car ahead of him in the westbound curb lane.
The pedestrian then rested his case. The driver made a motion, pursuant to Civ.R. 50(A), for a directed verdict. The driver argued first that the pedestrian was negligent per se because he violated a statute when he chose to jaywalk. The driver then argued that the pedestrian had not presented any evidence to show that she had acted in a negligent manner when she was driving.
The pedestrian argued that the directed verdict should not be granted. He said that even if he was jaywalking, the driver still had a duty to keep a look out for him and to make sure she did not hit him.
The trial court said:
 "The Court is going to find the motion for directed verdict well taken, because there is not testimony to indicate where the Defendant's car was in relationship to where the Plaintiff was. There is nothing but speculation.
 "The Defendant's car could have been rightfully within 10 to 15 feet of the rear of your one witness's car. The record and the evidence presented is absolutely barren of any facts from which a trier of fact could conclude at that — at the time the Plaintiff was in that westbound lane that the defendant was in such a position that he could have taken — and it is nothing but shear speculation and would be an aggregation of the duty and the responsibility of the Court not to submit to a jury nothing but speculative matters. There is just nothing there.
 "The only thing that the witness indicated that out of the corner of his eye he saw a vehicle approaching at a clip faster than he, but from all indications could very easily have still been within the speed limit. There is no — there is no issue in regards to excessive speed. No testimony from that person as to where in relationship to his vehicle this other car, which would have to be the car of the Defendant, would have been.
 "Court finds the motion well taken. Directed verdict is entered in favor of Defendant all of which the Plaintiff takes exception to."
The court's ruling was subsequently journalized, and the pedestrian brought this appeal.
The pedestrian has presented three assignments of error for consideration that are:
"FIRST ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN GRANTING A DIRECT VERDICT AGAINST PLAINTIFF AS PLAINTIFF PRODUCED SUFFICIENT EVIDENCE ON ALL ESSENTIAL ELEMENTS OF HIS CLAIMS.
"SECOND ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN DIRECTING A VERDICT AGAINST PLAINTIFF BECAUSE DEFENDANT VIOLATED OHIO REVISED CODE SECTION 451.21 AND WAS NEGLIGENT PER SE.
"THIRD ASSIGNMENT OF ERROR:
 THE TRIAL COURT ERRED IN GRANTING A DIRECTED VERDICT AGAINST PLAINTIFF BECAUSE PLAINTIFF VIOLATED OHIO REVISED CODE SECTION 4511.48(E)."
Because all three assignments of error address whether the trial court erred when it granted the driver a directed verdict, we will consider them together.
First, we note that an appellate court reviewing a directed verdict granted by a trial court must use the same standard of review applied by the trial court. That is:
 "The evidence is construed most strongly for the nonmoving party, who is also given the benefit of all reasonable inferences from the evidence. Ruta v. Breckenridge-Remy Co. (1982), 69 Ohio St.2d 66, 68, 23 O.O.3d 115, 116, 430 N.E.2d 935, 937. The court should consider neither the weight of the evidence nor the credibility of the witnesses. Osler v. Lorain (1986), 28 Ohio St.3d 345, 28 OBR 410, 504 N.E.2d 19, syllabus. A motion for a directed verdict tests the legal sufficiency of the evidence to take the case to the jury. Mayhorn v. Pavey (1982), 8 Ohio App.3d 189, 191, 8 OBR 258, 260, 456 N.E.2d 1222, 1226. Under this standard, the motion must be denied if there is substantial evidence upon which reasonable minds could come to different conclusions on the essential elements of the claim. Civ.R. 50(A)(4); O'Day v. Webb (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896, paragraph four of the syllabus." Donaldson v. Northern Trading Co. (1992), 82 Ohio App.3d 476, 480.
Second, we note that: "a directed verdict motion made at the close of plaintiff's evidence is evaluated on the evidence in the plaintiff's case in chief * * *." Chemical Bank of New York v. Neman (1990),52 Ohio St.3d 204, 207. Keeping these standards of review in mind, we now consider the arguments presented by the parties on appeal.
The pedestrian first argues that he met his burden to show that the driver breached a duty of due care when she ran into him with her car while he was crossing the street. He says that his testimony, and the testimony of the second driver he called on his behalf, showed where the driver's car was in relation to the pedestrian and how fast it was going.
First, he points to his testimony that: 1) before he crossed the center line he looked to his right and he could see no traffic coming toward him for two blocks down the street; and 2) he took his eyes from traffic only to focus on a space between the second driver's car and another vehicle that he could go between to reach the sidewalk he was heading toward to get to his employment. He says he was already almost completely through the center westbound lane when he was hit.
Second, he points to the testimony of the second driver that the car of the driver who hit the pedestrian passed by at a "pretty good clip". He says this was sufficient evidence to show where the driver was and how fast she was driving when she hit him.
Our own careful review of the trial transcript shows that the pedestrian testified that he did not see the driver's car before he was hit. He said he did not know where the car was because he did not see it when he looked to his right before he diverted his attention to the space between two cars that was his target. Therefore, his testimony did not show that the driver was not proceeding lawfully in her own lane of travel when the accident took place.
Our own review of the trial transcript also reveals that the second driver's testimony failed to show that the driver was not proceeding lawfully in her own lane of travel at the time of the accident. While the second driver did say that the driver passed him at a "pretty good clip" during his direct testimony, on cross-examination he testified that he was merely coasting when he was passed and he had no idea what speed he was traveling. Furthermore, he was never asked an opinion regarding whether the driver was speeding when she went past him. Therefore, his testimony did nothing to show that the driver was speeding or was in any other manner operating her vehicle in an unlawful way. While the pedestrian would have us hold that an inference could be drawn from the second driver's testimony that the driver was speeding when she went past, we agree with the trial court that only speculation could lead to that conclusion and a verdict must not be rendered on speculation. The trial court therefore did not err when it concluded that even when the evidence presented by the pedestrian in his case-in-chief was construed most favorably for the pedestrian, reasonable minds could only conclude that the evidence was insufficient to show that the driver was negligent.
The pedestrian next argues that the trial court should have found that he presented sufficient evidence to show that the driver was negligentper se because she violated a duty found in R.C. 4511.21. The statute in question, sometimes referred to at the assured-clear-distance statute, provides:
 "(A) No person shall operate a motor vehicle, trackless trolley, or streetcar at a speed greater or less than is reasonable or proper, having due regard to the traffic, surface, and width of the street or highway and any other conditions, and no person shall drive any motor vehicle, trackless trolley, or streetcar in and upon any street or highway at a greater speed than will permit him to bring it to a stop within the assured clear distance." R.C. 4511.21.
The pedestrian points to a four part test established by the Supreme Court of Ohio to show that the duty imposed by the statute on drivers in the above quoted statute is violated. The four part test includes a showing that the pedestrian was in front of the driver's car in the path of travel, that the person hit was either stationary or moving in the same direction as the driver's car, that the person hit did not suddenly appear in the driver's path, and that the person hit was reasonably discernible. See, Blair v. Goff-Kirby Co. (1976), 49 Ohio St.2d 5, 7. The pedestrian says he presented evidence to show that he was ahead of the driver in her lane, that he was "stationary or had slowed down", that he did not suddenly appear in the driver's lane, and that he could easily be seen.
The trial transcript shows that the pedestrian testified that he never stopped walking from the time he stepped off the curb to cross the street. Furthermore, the second driver testified that he believed the pedestrian had slowed down, but he could not affirmatively state that the pedestrian was stationary. Furthermore, while the second driver testified that he could clearly see the pedestrian, that testimony did nothing to show that the pedestrian was discernible to the driver who actually hit him before she hit him, or that from her perspective he did not suddenly appear before her in her lane of travel. Since the pedestrian's testimony, even when construed most favorably toward him, does not show that the four part test for a per se violation of the assured-clear-distance statute was met, we conclude that the trial court did not err when it granted the driver a directed verdict in this case.
Finally, the pedestrian argues that the trial court erroneously granted a directed verdict to the driver on the basis that the pedestrian had violated his own duty found under R.C. 4511.48(E). While the pedestrian does not contest that he did jaywalk, he argues that the cited statute, R.C. 4511.48(E), also establishes a duty for drivers to use due care to avoid hitting jaywalkers. He says that the trial court should have required the driver in this case to show that she was using due care in the operation of her vehicle, and that the trial court improperly shifted that burden of proof to him.
R.C. 4511.48 provides:
 "(A) Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right of way to all vehicles, trackless trolleys, or streetcars upon the roadway.
 "(B) Any pedestrian crossing a roadway at a point where a pedestrian tunnel or overhead pedestrian crossing has been provided shall yield the right of way to all traffic upon the roadway.
 "(C) Between adjacent intersections at which traffic control signals are in operation, pedestrians shall not cross at any place except in a marked crosswalk.
 "(D) No pedestrian shall cross a roadway intersection diagonally unless authorized by official traffic control devices; and, when authorized to cross diagonally, pedestrians shall cross only in accordance with the official traffic control devices pertaining to such crossing movements.
 "(E) This section does not relieve the operator of a vehicle, streetcar, or trackless trolley from exercising due care to avoid colliding with any pedestrian upon any roadway."
Ohio courts are agreed that under the above-quoted provisions, when a pedestrian jay-walks, an approaching driver has the right-of-way, as long as the approaching driver is lawfully operating a vehicle on the roadway. However, a pedestrian's act of jaywalking does not relieve the driver of an ongoing duty to use due care not to strike pedestrians, and if the driver is in some manner driving unlawfully, the driver and the pedestrian have "an equivalent obligation of exercising ordinary care."State v. Ward (1957), 105 Ohio App. 1, 11.
Thus, we agree with the pedestrian in this case that even though he was jaywalking the driver still had a duty to use due care not to hit him on the street. However, we disagree with his conclusion that the above-quoted statutory provisions put the burden on the driver to prove that she was using due care at the time of the accident. The pedestrian, as the plaintiff in this case, had the burden to prove his allegation that the driver did not use due care and that she was therefore negligent per se, and that her negligence was the greater proximate cause of the accident. As we have already noted, the trial court correctly concluded, after the pedestrian rested his case, that the evidence presented was not sufficient to show that the driver failed to use due care in her operation of her vehicle. Accordingly, the trial court did not err when it granted the driver a directed verdict on the basis that the pedestrian failed to show that the driver breached a statutory duty of due care found in R.C. 4511.48(E).
The pedestrian's first, second and third assignments of error are not well-taken. The judgment of the Lucas County Court of Common Pleas is affirmed. The pedestrian is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Melvin L. Resnick, J. James R. Sherck, J., JUDGES CONCUR.