COLE, Appellant,

v.

CONTRACT FRAMING, INC. et al., Appellees.

[Cite as *Cole v. Contract Framing, Inc.*, 162 Ohio App.3d 612, 2005-Ohio-4244.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 04AP–678 and 04AP–679.

Decided Aug. 16, 2005.

John K. Fitch, for appellant.

Alan E. Mazur, for appellee Sprouse & Sons Drywall, Ltd.

Vorys, Sater, Seymour & Pease, Bruce L. Ingram, and Perry W. Doran II, for appellee M/I Schottenstein Homes, Inc., n.k.a. M/I Homes, Inc.

PETREE, Judge.

{¶ 1} In this consolidated appeal, plaintiff-appellant, Thomas Cole, appeals from judgments of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, Sprouse & Sons Drywall, Ltd., and M/I Schottenstein Homes, Inc. For the reasons set forth below, we reverse the trial court's judgment in favor of Sprouse and affirm the trial court's judgment in favor of M/I. We also remand the matter to the trial court.

{¶ 2} On March 29, 2001, as plaintiff, an employee of an electrical subcontractor, ascended basement stairs in a residential structure that was under construction, the stairs failed. As a result, plaintiff fell to the ground and was injured.

{¶ 3} At the time of plaintiff's fall, M/I owned the property that was under construction. Besides owning the property, M/I also served as the general contractor for the construction project and subcontracted parts of the construction project to various subcontractors. According to the evidence, M/I contracted with Contract Lumber, Inc. for lumber and labor for the construction project. Contract Lumber, in turn, subcontracted with Contract Framing, Inc., which hired Robert Coakley to frame the residential structure and install the basement

stairs that later failed. Sprouse was a subcontractor that was hired to install drywall in the structure.

{¶ 4} In an amended complaint in common pleas case No. 02CVC–05–5678, plaintiff sued Contract Framing, Contract Lumber, M/I, Contract Lumber South, Inc.,[1] Sprouse, Robert Coakley, d.b.a. R.C. Builders, and anonymous defendants, alleging various theories of liability, including (1) lack of adequate warnings and defects in the manufacture and design of the stairway, (2) negligence, (3) breach of express warranties or implied warranties, or both, (4) breach of contractual obligations, and (5) willful, wanton, and reckless misconduct.

{¶ 5} Upon plaintiff's motion, the trial court consolidated common pleas case No. 02CVC–05–5678 with *Cole v. J.S. Rails, Inc.*, common pleas case No. 03CVC–03–3069.[2] Thereafter, in common pleas case No. 02CVC–05–5678, Contract Framing, Contract Lumber, M/I, and Sprouse separately moved for summary judgment concerning all claims made against them.

{¶ 6} The trial court denied the summary judgment motions of Contract Framing and Contract Lumber. However, in separate judgments, the trial court granted summary judgment in favor of M/I and Sprouse. In its judgments in favor of M/I and Sprouse, the trial court expressly determined that there was no just reason for delay. See, generally, Civ.R. 54(B).

{¶ 7} From the judgments in favor of Sprouse and M/I, plaintiff timely appeals. By journal entry, this court sua sponte consolidated the appeals.

{¶ 8} From the trial court's judgment in favor of Sprouse, plaintiff assigns a single error:

The trial court erred in granting summary judgment to appellee Sprouse & Sons Drywall, Ltd.

{¶ 9} From the trial court's judgment in favor of M/I, plaintiff assigns a single error:

The trial court erred in granting summary judgment to appellee M/I Schottenstein Homes, Inc.

{¶ 10} Appellate review of a lower court's granting of summary judgment is de novo. *Mitnaul v. Fairmount Presbyterian Church*, 149 Ohio App.3d 769, 2002-Ohio-5833, 778 N.E.2d 1093, at ¶ 27. " '*De novo* review means that this court uses the same standard that the trial court should have used, and we examine the

---

1. Pursuant to Civ.R. 41, plaintiff later dismissed without prejudice defendant Contract Lumber South.

2. Plaintiff later dismissed without prejudice defendants J.S. Rails, Inc. and Anderson Safety Consultants, Inc., which were parties in common pleas case No. 03CVC–03–3069.

evidence to determine whether as a matter of law no genuine issues exist for trial.'" Id., quoting *Brewer v. Cleveland City Schools* (1997), 122 Ohio App.3d 378, 701 N.E.2d 1023, citing *Dupler v. Mansfield Journal Co., Inc.* (1980), 64 Ohio St.2d 116, 119–120, 18 O.O.3d 354, 413 N.E.2d 1187.

{¶ 11} Summary judgment is proper when the movant demonstrates that (1) no genuine issue of material fact exists, (2) the movant is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor. Civ.R. 56; *State ex rel. Grady v. State Emp. Relations Bd.* (1997), 78 Ohio St.3d 181, 183, 677 N.E.2d 343.

{¶ 12} Under Civ.R. 56(C), a movant bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Once a movant discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial. Id. at 293, 662 N.E.2d 264; *Vahila v. Hall* (1997), 77 Ohio St.3d 421, 430, 674 N.E.2d 1164; Civ.R. 56(E).

■ {¶ 13} In his appeal from the trial court's grant of summary judgment in favor of Sprouse, plaintiff asserts that the trial court erred when it concluded that the opinions of his expert witness, Stephen Galli, a licensed architect, were speculative. Plaintiff asserts that Galli's opinion was based upon reasonable inferences from the evidence, not speculation. Sprouse contends that Galli's opinion rests upon speculation, conjecture, and guesswork, and, consequently, it fails to create a genuine issue of material fact.

■ {¶ 14} "It has been observed that there is no simple litmus test for determining whether a material issue of fact is presented." *Duke v. Sanymetal Products Co.* (1972), 31 Ohio App.2d 78, 80–81, 60 O.O.2d 171, 286 N.E.2d 324, citing *Am. Mfrs. Mut. Ins. Co. v. Am. Broadcasting–Paramount Theatres, Inc.* (C.A.2, 1967), 388 F.2d 272, 279. "In determining whether a 'genuine issue' exists, a court must inquire 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Wall v. Firelands Radiology, Inc.* (1995), 106 Ohio App.3d 313, 322, 666 N.E.2d 235, quoting *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 251–252, 106 S.Ct. 2505, 91 L.Ed.2d 202; *Turner v. Turner* (1993), 67 Ohio St.3d 337, 617 N.E.2d 1123. A genuine issue of material fact may arise "where the facts presented in the moving papers are uncertain or indefinite; in other words, the picture that is painted in the moving papers either is clear,

but incomplete, or is obscured by imprecise facts." *Duke,* 31 Ohio App.2d at 81, 60 O.O.2d 171, 286 N.E.2d 324, citing *Braniff v. Jackson Ave. Gretna Ferry, Inc.* (C.A.5, 1960), 280 F.2d 523, 526–528.

{¶ 15} A vital material issue in this case is whether a drywall installer removed braces from the basement stairs while installing drywall in the basement stairwell, thereby allegedly proximately causing the basement stairs to fail when plaintiff ascended the stairs. According to plaintiff's theory, during drywall installation, a drywall installer would have been required to cut around the braces and later repair the drywall or, alternatively, remove some braces before installing the drywall. Plaintiff theorizes that an absence of drywall repair suggests that braces were removed during drywall installation.

{¶ 16} "Evid.R. 702 permits experts to testify as to their opinion, and even their opinion as to the ultimate issue under Evid.R. 704. Evid.R. 703 and 705, however, require that the expert establish the basis from which they draw the inferences for their expert opinion." *Estate of Holley v. Am. Family Life Assur. Co. of Columbus,* Pickaway App. No. 04CA5, 2005-Ohio-2281, 2005 WL 1097799, at ¶ 24; see, also, Evid.R. 703 and 705. Furthermore, "an expert witness may have an opinion based on inferences drawn from facts as provided for in Evid.R. 703." *Estate of Holley,* at ¶ 25. However, an expert witness cannot reach a conclusion where one inference is based upon another inference. Id.

{¶ 17} In *Donaldson v. N. Trading Co.* (1992), 82 Ohio App.3d 476, 612 N.E.2d 754, an appeal from a directed verdict, this court stated:

Though widely denounced by both courts and legal commentators, the rule prohibiting the stacking of one inference upon another is still recognized in Ohio. Nevertheless, the rule has very limited application. It prohibits only the drawing of one inference solely and entirely from another inference, where that inference is unsupported by any additional facts or inferences drawn from other facts. But the rule does not forbid the use of parallel inferences in combination with additional facts. Nor does it prohibit the drawing of multiple inferences separately from the same set of facts. Because reasonable inferences drawn from the evidence are an essential element of the deductive reasoning process by which most successful claims are proven, the rule against stacking inferences must be strictly limited to inferences drawn exclusively from other inferences.

(Citations and footnote omitted.) Id. at 481, 612 N.E.2d 754. See, also, *State v. Miller* (Mar. 7, 1990), Medina App. No. 1822, 1990 WL 27166.

{¶ 18} Applying *Donaldson,* the Fourth District Court of Appeals in *Blevins v. Begley Tree Serv.* (Oct. 10, 1997), Adams App. No. 96CA632, 1997 WL 624317,

considered an appeal from a directed verdict in favor of Begley Tree Service. In *Blevins,* James Blevins, who was accompanied by his wife and daughter, was traveling in his pickup truck when a large limestone rock entered the driver's open window, striking Blevins in the head, neck, and shoulder area. The impact temporarily rendered Blevins unconscious. Believing that the rock that struck him had been hurled by a heavy-duty mowing machine operated by an employee of Begley. Blevins and his wife sued Begley, among others, alleging that Begley's employee negligently operated a mower. After the trial court granted a directed verdict in favor of Begley, Blevins and his wife appealed, claiming that the matter should have been presented to the jury for their consideration of liability. Begley, however, argued that (1) there was no testimony that the mower hit a rock and (2) there was no testimony that the rock that had struck Blevins came from the mower. Begley further argued that to link the rock that caused Blevins's injury to the mower impermissibly required stacking an inference upon an inference. On appeal, the *Blevins* court found that the issue on appeal concerned whether the plaintiffs failed to produce any evidence that would link Begley's alleged breach of duty to the proximate cause of Blevins's injuries.

{¶ 19} The *Blevins* trial court found that direct uncontroverted evidence showed that (1) a rock hit Blevins, (2) Begley's machine was working within 200 to 300 feet of Blevins when Blevins was struck, (3) Begley's machine was at a 45–degree angle to the roadway where Blevins's truck was being driven in the opposite direction, (4) Begley's machine was capable of throwing a rock like the one that hit Blevins for 500 feet, and (5) to operate the machine within 200 to 300 feet of vehicles without stopping either traffic or the operation of the machine constituted a breach of the standard of care. There was no direct evidence that Begley's mower had thrown a rock. Furthermore, there was conflicting evidence whether (1) the mower's operator could always notice an impact with a rock and (2) the mower always pulverized rocks instead of throwing them.

{¶ 20} Reversing the trial court, the *Blevins* appeals court agreed that the case rested upon an inference that Begley's mower actually struck a rock and that this rock, in turn, struck Blevins. However, the *Blevins* court did not find that these two inferences were impermissible and solely drawn from each other. The *Blevins* court observed that Blevins's daughter testified that she had seen the mower across the creek from the truck and that she saw a gray streak traveling toward the vehicle. From these facts and Blevins's expert's testimony, the *Blevins* court found the jury logically could infer that the mower had thrown the rock that Blevins's daughter saw. Blevins's daughter also stated that after she saw the rock approach the truck, she saw her father slump over the wheel, the truck went into a ditch, and the rock lay on the floorboard of the truck. From these additional facts, the *Blevins* court found that the jury logically could have

inferred that the rock that Blevins's daughter had seen was the rock that hit Blevins. The *Blevins* court concluded that "[r]egardless of whether these inferences are characterized as being 'parallel' or 'multiple inferences from the same facts,' they are sufficient to allow reasonable minds to differ on the issue of causation." Id. Furthermore, the *Blevins* court concluded that the testimony of Blevins's expert witness that it was unreasonable to operate the mower within 200 to 300 feet of the road without stopping traffic or stopping the mower satisfied the plaintiffs' burden concerning the element of duty. Id.

{¶ 21} Here, there is no direct evidence that a drywall installer removed braces while installing drywall. Cf. *Blevins* (wherein there was no direct evidence that Begley's mower threw a rock that struck Blevins). Plaintiff's case against Sprouse rests upon an inference that a drywall installer removed braces, and this, in turn, proximately caused the basement stairs to fail. Essential to establishing a claim against Sprouse is a determination of whether Galli's opinion, which establishes a causal nexus between the drywall installation and the stairs' failure, is based upon permissible inferences.

{¶ 22} In deposition testimony, Galli testified that photographs taken subsequent to the accident showed that the drywall had not been repaired. Later, in an affidavit, Galli also averred that he did not see evidence of cut-outs and repairs during an inspection of the drywall. From these facts, Galli inferred that a drywall installer removed two braces because, according to Galli, "[n]o other person or tradesman would have the motive to remove those studs, nor would it fall within the scope of their work to do so."

{¶ 23} Here, there is a factual basis underlying Galli's opinion that the drywall had not been repaired, e.g., Galli's inspection of the drywall and his assessment of photographic and video evidence. Absent a finding that the drywall had been repaired, Galli logically could infer that a drywall installer removed the braces during the installation of drywall based upon his professional experience that "[n]o other person or tradesman would have the motive to remove those studs, nor would it fall within the scope of their work to do so." See, generally, *Donaldson*, 82 Ohio App.3d at 481, 612 N.E.2d 754 (stating that the rule prohibiting the stacking of one inference upon another "prohibits only the drawing of one inference solely and entirely from another inference, where that inference is unsupported by any additional facts or inferences drawn from other facts").

{¶ 24} Construing the evidence in favor of plaintiff, because there is evidence that suggests the drywall had been repaired, which, in turn, could support an inference that the braces may not have been removed, we conclude that Galli's opinion creates a genuine issue of material fact as to whether a drywall installer removed the braces.

{¶ 25} Having concluded that a genuine issue of material fact exists as to whether a drywall installer removed braces supporting the basement stairs during drywall installation, we hold that the trial court erred by granting summary judgment in favor of Sprouse. We therefore sustain plaintiff's assignment of error as to the trial court's grant of summary judgment in favor of Sprouse.

{¶ 26} In its appeal from summary judgment in favor of M/I, plaintiff asserts that the trial court erred when it found M/I owed no duty to plaintiff. Plaintiff further asserts that because M/I actively participated in the construction of the residential structure, then liability properly should attach to M/I.

{¶ 27} Here, M/I was the general contractor for the construction project, and it was the owner of the property under construction. According to the evidence, M/I contracted with Contract Lumber to provide labor and materials for the construction project. Contract Lumber, in turn, subcontracted with Contract Framing, which subcontracted with Coakley to frame the residential structure and install the basement stairs that later failed.

{¶ 28} The Supreme Court of Ohio has stated that "[a] construction site is inherently a dangerous setting." *Bond v. Howard Corp.* (1995), 72 Ohio St.3d 332, 336, 650 N.E.2d 416. The Supreme Court of Ohio has further stated that "a subcontractor who works at a construction site is engaged in inherently dangerous work." *Michaels v. Ford Motor Co.* (1995), 72 Ohio St.3d 475, 479, 650 N.E.2d 1352, fn. 4. Moreover, this court previously has found that "[i]t is well-settled that a construction site is an inherently dangerous work environment. * * * In addition, a subcontractor who works at a construction site is engaged in inherently dangerous work." *Collier v. Borror Corp.* (Nov. 5, 1998), Franklin App. No. 97APE12–1624, 1998 WL 767324; see, also, *McClary v. M/I Schottenstein Homes, Inc.*, Franklin App. No. 03AP–777, 2004-Ohio-7047, 2004 WL 2980561, at ¶ 58.

{¶ 29} Here, treading upon stairs is not, in and of itself, a dangerous activity. However, treading upon stairs at a construction site, which is an inherently dangerous setting, *Bond,* 72 Ohio St.3d at 336, 650 N.E.2d 416, and treading upon stairs which seemingly were supported by braces does provide plaintiff who was treading upon such stairs with some notice that real or potential dangers existed. See *Frost v. Dayton Power & Light Co.* (2000), 138 Ohio App.3d 182, 740 N.E.2d 734 (Evans, J., dissenting; Harsha, J., concurring in judgment only), amended by *Frost v. Dayton Power & Light Co.* (July 25, 2000), Adams App. No. 98 CA 669, 2000 WL 1029141, which states:

> While we agree with appellant that painting generally is not, in and of itself, dangerous, we believe that an independent contractor engaged to paint in an

industrial environment should recognize that real or potential dangers exist. The independent contractor's employee's injury in the instant case cannot be deemed to be beyond the realm of foreseeable risks given this industrial workplace environment. * * *

*Frost* at 199, 740 N.E.2d 734; *McClary,* supra, at ¶ 58.

{¶ 30} In *Wellman v. E. Ohio Gas Co.* (1953), 160 Ohio St. 103, 51 O.O. 27, 113 N.E.2d 629, the Supreme Court of Ohio set forth the general rule concerning a duty owed by one who engages an independent contractor to perform inherently dangerous work:

1.   Where an independent contractor undertakes to do work for another in the very doing of which there are elements of real or potential danger and one of such contractor's employees is injured as an incident to the performance of the work, no liability for such injury ordinarily attaches to the one who engaged the services of the independent contractor.

2.   One who engages an independent contractor to do work for him ordinarily owes no duty of protection to the employees of such contractor, in connection with the execution of the work, who proceeds therewith knowing and appreciating that there is a condition of danger surrounding its performance.

Id. at paragraphs one and two of the syllabus;  see, also, *Sopkovich v. Ohio Edison Co.* (1998), 81 Ohio St.3d 628, 636–637, 693 N.E.2d 233 (discussing *Wellman* ).

{¶ 31} Less than two years after *Wellman,* in *Schwarz v. Gen. Elec. Realty Corp.* (1955), 163 Ohio St. 354, 56 O.O. 319, 126 N.E.2d 906, the Supreme Court of Ohio held:

1.   Where an owner of premises engages an independent contractor to do work thereon, an employee of the contractor while performing the work is on the premises impliedly as an invitee of the owner, and the owner owes the employee the duty of exercising ordinary care to maintain the premises in a reasonably safe condition for use, this duty not extending, however, to any inherent hazards necessarily present because of the character of the work to be done.

2.   The rule that an owner must keep his premises in a reasonably safe condition for an independent contractor and his employees while performing thereon the work for which they are employed by the owner does not apply to a hazard created by negligent operation by the independent contractor or his employees.

Id. at paragraphs one and two of the syllabus;  see, also, *Sopkovich,* 81 Ohio St.3d at 637–638, 693 N.E.2d 233 (discussing *Schwarz* ).

{¶ 32} In *Hirschbach v. Cincinnati Gas & Elec. Co.* (1983), 6 Ohio St.3d 206, 6 OBR 259, 452 N.E.2d 326, the Supreme Court of Ohio carved out an exception to *Wellman. Sopkovich,* 81 Ohio St.3d at 638, 693 N.E.2d 233. The *Hirschbach* court held:

> One who engages the services of an independent contractor, and who actually participates in the job operation performed by such contractor and thereby fails to eliminate a hazard which he, in the exercise of ordinary care, could have eliminated, can be held responsible for the injury or death of an employee of the independent contractor.

Id. at syllabus.

{¶ 33} Following *Hirschbach,* the Supreme Court of Ohio considered whether a general contractor, simply by virtue of its general supervisory capacity over a construction site, owed a duty of care to employees of an independent subcontractor engaged in inherently dangerous work. *Sopkovich,* 81 Ohio St.3d at 639, 693 N.E.2d 233. In *Cafferkey v. Turner Constr. Co.* (1986), 21 Ohio St.3d 110, 21 OBR 416, 488 N.E.2d 189, the Supreme Court held:

> A general contractor who has not actively participated in the subcontractor's work, does not, merely by virtue of its supervisory capacity, owe a duty of care to employees of the subcontractor who are injured while engaged in inherently dangerous work.

Id. at syllabus.

{¶ 34} Thereafter, in *Bond,* supra, construing and applying *Cafferkey,* the Supreme Court of Ohio held:

> For purposes of establishing liability to the injured employee of an independent subcontractor, "actively participated" means that the general contractor directed the activity which resulted in the injury and/or gave or denied permission for the critical acts that led to the employee's injury, rather than merely exercising a general supervisory role over the project.

Id., 72 Ohio St.3d 332, 650 N.E.2d 416, at syllabus.

{¶ 35} Almost three years after *Bond,* in *Sopkovich,* supra, after carefully reviewing its own judicial precedents, the Supreme Court of Ohio further determined that "active participation giving rise to a duty of care may be found to exist where a property owner either directs or exercises control over the work activities of the independent contractor's employees, or where the owner retains or exercises control over a critical variable in the workplace." *Sopkovich,* 81 Ohio St.3d at 643, 693 N.E.2d 233.

{¶ 36} Here, even construing the evidence most strongly in favor of plaintiff, we cannot conclude that M/I directed or exercised control over the work activities of Contract Framing's employees or its subcontractors. Neither can we conclude

that M/I directed or exercised control over the work activities of Sprouse's employees or its subcontractors. Moreover, based upon the evidence in the record, we cannot conclude that M/I directed or exercised control over the work activities of other subcontractors.

{¶ 37} Furthermore, we cannot conclude that M/I retained or exercised control over a critical variable in the workplace. In the present case, M/I provided blueprints for the home that was under construction, but it did not direct or interfere with the work of Contract Framing or its subcontractor, Coakley. Even construing the evidence in favor of plaintiff, we conclude that M/I exercised general supervision over the construction project. However, absent active participation in a subcontractor's work, a general contractor, merely by virtue of its supervisory capacity, does not owe a duty of care to employees of a subcontractor who are injured while engaged in inherently dangerous work. *Cafferkey*, 21 Ohio St.3d 110, 21 OBR 416, 488 N.E.2d 189, syllabus.

{¶ 38} Furthermore, although there is evidence that employees of the electrical subcontractor complained about the safety of the basement stairs to the electrical subcontractor one day prior to plaintiff's fall, and this information was later made known to representatives of M/I, construing this evidence in favor of plaintiff, this evidence does not suggest that M/I had notice about these electricians' concerns prior to plaintiff's fall. If M/I had known of these safety concerns about the basement stairs prior to plaintiff's fall, such knowledge may have served to create a genuine issue of material fact. See *Cyr v. Bergstrom Paper Co.* (1982), 3 Ohio App.3d 299, 301, 3 OBR 345, 444 N.E.2d 1349 (stating that "an employer may be liable to an independent contractor, as an invitee, for injuries caused by a dangerous condition, but only if he knew or reasonably should have known of the condition"); see, also, *Hirschbach*, 6 Ohio St.3d at 208, 6 OBR 259, 452 N.E.2d 326, fn. 2, quoting *Parsons v. Blount Bros. Constr. Co.* (C.A.6, 1960), 281 F.2d 414, 417 (stating that " '[t]he existence of hazards which could be eliminated by the exercise of ordinary care by those in custody and control of the premises cannot be considered inherent hazards necessarily present because of the character of the work to be done' ").

{¶ 39} Accordingly, absent any evidence that M/I had prior knowledge of the electricians' safety concerns about the basement stairs and, absent any evidence that M/I directed or exercised control over the work activities of subcontractors or that it retained or exercised control over a critical variable in the workplace, we hold that there is no genuine issue of material fact to preclude summary judgment in favor of M/I. Therefore, plaintiff's assignment of error concerning the judgment in favor of M/I is not well taken, and we therefore overrule this assignment of error.

624

{¶ 40} Accordingly, having sustained plaintiff's assignment of error as to defendant Sprouse and having overruled plaintiff's assignment of error as to defendant M/I, we therefore reverse the judgment of the Franklin County Court of Common Pleas in favor of Sprouse and affirm the judgment of the Franklin County Court of Common Pleas in favor of M/I. We further remand this cause to that court for further proceedings in accordance with law and consistent with this opinion.

Judgment accordingly.

FRENCH and McCORMAC, JJ., concur.

JOHN McCORMAC, J., retired, of the Tenth Appellate District, sitting by assignment.