OPINION
{¶ 1} Plaintiff-appellant, Geraldine McKenzie, administrator of the Estate of Donald G. Spearry, appeals from a judgment of the Franklin County Court of Common Pleas granting summary judgment in favor of defendants-appellees, FSF Beacon Hill Associates, LLC ("FSF"), CRES Management, LLC ("CRES"), and Trinity Property Consultants, LLC ("Trinity"). For the following reasons, we affirm.
 {¶ 2} On October 2, 2002, Spearry suffered serious burns while he showered in his apartment at The Pines at Creek's Edge ("The Pines"). Spearry, who lived with his sister, McKenzie, later told McKenzie that he had taken a bath in the combination shower/bathtub, and then stood up and turned on the shower to wash his hair. The water from the shower burned Spearry's face, and he fell back into the bathtub. When McKenzie heard Spearry scream for help, she rushed to the bathroom and found Spearry laying in the bathtub with burns on his feet, scrotum, and buttocks.
 {¶ 3} After a lengthy hospitalization, Spearry died. Seeking recovery for Spearry's injuries and death as well as her own loss, McKenzie filed suit against FSF, the owner of The Pines; CRES, the managing agent of The Pines from September 1, 2001 to October 1, 2002; and Trinity, the managing agent of The Pines from October 1, 2002 to the present. In her complaint, McKenzie asserted claims for negligence, alleging that defendants were liable because they set the temperature of the water heater that supplied the apartment at such a dangerously high level that the shower water scalded Spearry in seconds.
 {¶ 4} On June 15, 2005, defendants moved for summary judgment and argued that McKenzie could not provide sufficient evidence to create a question of fact as to defendants' negligence.[1] McKenzie disagreed and, in her memorandum contra, pointed to evidence that she maintained proved that defendants set the water heater to its highest setting (denominated on the dial as "hot") without appreciating that, at that setting, the water heater would produce 160 degree water. Citing the testimony of The Pines' maintenance supervisor, McKenzie asserted that defendants knew that a water heater set on "hot" would emit scalding water.
 {¶ 5} In making her argument against summary judgment, McKenzie relied solely upon two photographs to establish the make and model of the water heater in apartment 1D, where Spearry and McKenzie once lived. McKenzie used the same photographs throughout the discovery process. After the parties completed the summary judgment briefing, a dispute arose as to the authenticity of the photographs. Ultimately, McKenzie admitted that the photographs did not, in fact, depict the water heater in apartment 1D. Upon defendants' motion, the trial court struck the photographs from the record and did not consider them in ruling on defendants' summary judgment motion.
 {¶ 6} On October 18, 2005, the trial court issued a decision granting summary judgment in defendants' favor. The trial court reduced this decision to judgment on October 31, 2005. McKenzie now appeals from the October 31, 2005 judgment entry.
 {¶ 7} On appeal, McKenzie assigns the following errors:
 [1.] The trial court committed reversible error by granting Defendants/Appellees FSF Beacon Hill Associates, LLC, Trinity Property Consultants, LLC and C.R.E.S. Management, LLC's Motion for Summary Judgment on all of Plaintiff/Appellant McKenzie's claims.
 [2.] The trial court committed reversible error by granting Defendant/Appellee C.R.E.S. Management, LLC's separate Motion for Summary Judgment.
 {¶ 8} Appellate review of summary judgment motions is de novo.Helton v. Scioto Cty. Bd. Of Commrs. (1997), 123 Ohio App.3d 158, 162. "When reviewing a trial court's ruling on summary judgment, the court of appeals conducts an independent review of the record and stands in the shoes of the trial court." Mergenthal v. Star Banc Corp. (1997),122 Ohio App.3d 100, 103. Civ. R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. State ex rel. Grady v. State Emp. RelationsBd. (1997), 78 Ohio St.3d 181, 183.
 {¶ 9} When seeking summary judgment on the ground that the nonmoving party cannot prove its case, the moving party bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on an essential element of the nonmoving party's claims. Dresher v. Burt (1996), 75 Ohio St.3d 280,293. The moving party does not discharge this initial burden under Civ. R. 56 by simply making a conclusory allegation that the nonmoving party has no evidence to prove its case. Id.; Vahila v. Hall (1997),77 Ohio St.3d 421, 429. Rather, the moving party must affirmatively demonstrate by affidavit or other evidence allowed by Civ. R. 56(C) that the nonmoving party has no evidence to support the nonmoving party's claims. Dresher, supra, at 293. If the moving party meets this initial burden, then the non-moving party has a reciprocal burden outlined in Civ. R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the non-movant does not so respond, summary judgment, if appropriate, shall be entered against the non-moving party. Id.
 {¶ 10} By her first assignment of error, McKenzie argues that a question of fact remains as to defendants' negligence in setting the water heater at an unsafe temperature. We disagree.
 {¶ 11} McKenzie asserts defendants are negligent per se because they violated R.C. 5321.04(A)(4), which requires landlords to "[m]aintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances, and elevators, supplied or required to be supplied by him." As this provision sets forth specific duties that are the same under all circumstances and are imposed upon all landlords, a violation of R.C. 5321.04(A)(4) constitutes negligence per se. Sikora v. Wenzel (2000),88 Ohio St.3d 493, 498; Shroades v. Rental Homes, Inc. (1981),68 Ohio St.2d 20, 25. In order to establish negligence per se, a plaintiff must prove that the defendant failed to perform its statutory duty.[2]Chambers v. St. Mary's School (1998), 82 Ohio St.3d 563, 565. Consequently, we must examine the record for evidence that defendants failed to perform their statutory duty to maintain the water heater in "good and safe working order and condition."
 {¶ 12} Here, McKenzie claims that defendants violated R.C. 5321.04(A)(4) when they set the water heater in apartment 1D to "hot," thus increasing the water temperature to 160 degrees — an unsafe temperature. The record is devoid of any direct evidence as to the temperature setting of the water heater at the time of Spearry's injuries. McKenzie, however, argues that a reasonable finder of fact could infer the setting from the testimony of two maintenance technicians who worked at The Pines. The first maintenance technician, Robert White, testified that he personally set all the water heaters he installed at The Pines to "hot." White, however, did not install the water heater in apartment 1D, so a reasonable finder of fact could not infer the temperature setting of that water heater from this testimony. Similarly, although maintenance technician Robert Trail testified that he, too, personally set water heaters to "hot," there is no evidence that Trail ever set the temperature of the water heater in apartment 1D.
 {¶ 13} Contrary to McKenzie's allegations, both White and Trail testified that setting water heaters to "hot" was their personal practice and not an apartment-wide policy. Therefore, no factual basis exists on which to infer that all the water heaters at The Pines were set to "hot."
 {¶ 14} Thus, McKenzie is left with White's testimony that he set the water heaters he installed to "hot" because his one-time supervisor, Timothy McCain, told him to do so.[3] However, in order to accept this testimony as proof that the water heater in apartment 1D was set to "hot," a reasonable finder of fact would have to stack inference upon inference. First, the finder of fact would have to infer that McCain also told the other members of the maintenance staff, at least four other technicians, to set all water heaters to "hot." Then, the finder of fact would have to use this first inference as the sole basis on which to infer that one of those other technicians set the apartment 1D water heater to "hot" per McCain's instruction. A finder of fact is prohibited from drawing an inference solely and entirely from another inference. Cole v. Contract Framing, Inc., 162 Ohio App.3d 612,2005-Ohio-4244, at ¶ 17. Consequently, White's testimony that McCain told him to set water heaters to "hot" is not evidence that the water heater in apartment 1D was set to "hot."
 {¶ 15} Moreover, even if McKenzie could establish the temperature setting of the apartment 1D water heater as "hot," McKenzie failed to present any evidence as what temperature of water would result from the "hot" setting. McKenzie introduced two expert reports that stated that the "hot," or maximum, setting on the subject water heater would cause the water to heat to 160 degrees. However, neither expert was properly informed as to the make and model of water heater at issue. McKenzie does not dispute that the water heater in apartment 1D was different than what she originally believed, and that she did not discover the discrepancy until July 25, 2005. By that time, the experts had both issued their reports, and both reports relied upon erroneous information. Therefore, the record contains no evidence as to the temperature the actual water heater would reach when set to "hot."
 {¶ 16} Without evidence as to the temperature setting or temperature range of the water heater in apartment 1D, a reasonable finder of fact could only speculate as to whether defendants failed to maintain the water heater in "good and safe working order and condition." "`Mere speculation does not create a material issue of fact.'" Sharp v.Andersons, Inc., Franklin App. No. 06AP-81, 2006-Ohio-4075, at ¶ 18, quoting Wike v. Giant Eagle, Inc., Portage App. No. 2002-P-0049, 2003-Ohio-4034, at ¶ 32. Accordingly, we conclude that the trial court properly granted summary judgment in defendants' favor, and we overrule McKenzie's first assignment of error.
 {¶ 17} Given our ruling upon McKenzie's first assignment of error, her second assignment of error is moot.
 {¶ 18} For the foregoing reasons, we overrule McKenzie's first assignment of error and overrule as moot McKenzie's second assignment of error. Further, we affirm the judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
 McGRATH and TRAVIS, JJ., concur.
[1] Six days later, defendants filed a "Supplemental Motion for Summary Judgment" in which they set forth the same argument and, in addition, contended that CRES was not liable because its management of The Pines ended a day before the accident.
[2] Liability for a violation of R.C. 5321.04(A)(4) can be excused under certain circumstances. Sikora, supra, at 498. This legal doctrine is not applicable here because McKenzie cannot prove that defendants' actions violated R.C. 5321.04(A)(4). Absent a violation of the relevant statute, a defendant's actions need not be excused.
[3] In contrast to White's testimony, Trail stated that he never talked with anyone, including McCain, about where to set the temperature of a water heater. McCain testified that he never told any of the maintenance technicians he supervised to set water heaters at "hot."